LEWIS LATIMER *et al.*

*v.*

LORETTA LATIMER *et al.*

*Opinion filed October 24, 1898.*

1. DEEDS—*there is a sufficient delivery if grantor loses all control of deed.* There is a sufficient delivery of a deed to a third person, for the grantee, where the grantor, by his act of delivery, voluntarily parts with all control over the instrument intending to vest the estate in the grantee.

2. SAME—*delivery is dependent largely on grantor's intention.* Whether a delivery to a third party is sufficient is a question to be determined largely from the grantor's intention, to be ascertained from his acts and declarations and by the circumstances of the case.

3. SAME—*presumption of delivery is strong in case of voluntary settlement.* The presumption of delivery of a deed is stronger in case of a voluntary settlement than in case of an ordinary bargain and sale.

4. SAME—*facts sufficient to constitute a valid delivery.* A deed from father to son, executed to secure the ownership of the farm to the latter at his father's death, in order that he might feel secure in making valuable improvements, and handed by the grantor to the notary to be placed in the latter's safe at his bank, with directions to take and keep the deed and at the grantor's death deliver it to the son, is well delivered.

5. SAME—*when deed is not a testamentary devise—livery of seizin.* Since the abolishment of livery of seizin in Illinois a conveyance delivered, but not to take effect or be recorded until the grantor's death, is valid without the creation of an intermediate estate, and is not a testamentary devise, which must be executed like a will.

6. The court reviews the evidence in this case, and holds it to be insufficient to sustain the charge of undue influence by the grantee, but rather as indicating the grantor's deliberate intent to immediately invest the grantee with an estate in remainder, based upon the grantor's life estate.

APPEAL from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This is a bill in chancery by Lewis Latimer, Eunice A. Flint and Catherine A. Earing, against Loretta Latimer, Arthur C. Latimer, administrator of the estate of James A. Latimer, deceased, Arthur C. Latimer, Matie D. Latimer, Bertie R. Latimer, Otho A. Latimer and W. A.

Morey, seeking to cancel a deed from Lewis Latimer to James A. Latimer, and for possession of the premises described in said deed, and also for an accounting of the rents and profits.

Upon the trial of this cause in the circuit court of LaSalle county, the chancellor, at the time of the rendition of the decree, filed a written and carefully prepared statement of the facts. An investigation of the record leads us to adopt this statement of facts involved as being fair and complete. It is as follows:

"In the year 1845 Lewis Latimer, one of the complainants, was living in the State of New York. His wife had recently died, leaving three children of tender age,—two daughters and one boy. The daughters were from eight to twelve years of age, and the boy from five to seven. Lewis Latimer, the father, bound out the two girls and emigrated to the State of Illinois in the year 1845, and settled in LaSalle county with the boy. For about two years in LaSalle county he farmed as a renter. In 1848 he married and bought the farm involved in this contention and commenced improving the same. The boy, James A. Latimer, lived with his father and worked upon the farm during his minority, and from aught that appears in this record he performed every filial duty. He was frugal, industrious and obedient. On his twenty-first birthday, in 1861 or thereabouts, he enlisted in the army and continued therein in active service until the close of the war. At the close of the war he returned to his father's home in LaSalle county, and by mutual agreement between himself and his father they worked the farm in question on shares for two years. Then James A. Latimer married and worked the farm of his father on shares for another year. He then farmed several years as a renter of land from other persons. He then purchased eighty acres of land in Brookfield, LaSalle county, moved onto the same with his family and commenced improving it. He continued thereon for about eleven years, making

a living for his family, but did not succeed in paying for the land.

"About 1883 the second wife of Lewis Latimer and the step-mother of James A. Latimer died. An arrangement was then made between Lewis Latimer and his son, James, whereby James Latimer moved onto the farm in question. There were two houses on said farm. Lewis Latimer continued to keep house in one of the houses, hiring a house-keeper. Lewis Latimer was then well advanced in years, unable to perform hard labor, and James took charge of the management of the farm, made some improvements thereon from year to year, and kept the farm in good condition and repair until September, 1894, when the deed in question was executed. It is a fair assumption from the evidence in this case that there was an implied understanding, during all this time, between Lewis Latimer and his son, James A. Latimer, that James was ultimately to have the farm. The matter was spoken of between them on several occasions. On or about the first day of September, 1894, the question of sinking a well upon the farm was discussed between Lewis Latimer and his son, James. James said, in substance, to his father, that he was unwilling to sink the well and pay for it without knowing who was to have the farm. The talk between them upon that subject led to the conclusion that Lewis Latimer would execute a will, or some paper which would secure the farm to James A. Latimer at the time of his (Lewis') death, and it was agreed that Woodruff A. Morey, then living in Marseilles, LaSalle county, should be procured to come out to the farm and make the necessary papers. Mr. Morey had formerly lived and grown up in the neighborhood where Lewis Latimer lived, and they were well acquainted with each other. In pursuance of that understanding, James A. Latimer, on or about September 20, 1894, called upon Woodruff A. Morey at his place of business in Marseilles and arranged with him to come to the residence of Lewis Latimer and

make the necessary papers. On September 21, 1894, said Morey came to the home of Lewis Latimer and prepared a deed, which was executed by Lewis Latimer and properly acknowledged. After the execution of said deed the grantor, Lewis Latimer, handed the same to Morey, saying, 'I want you to take that deed and keep it, and after my decease to deliver it to James Latimer.'

"Thereafter James A. Latimer and Lewis Latimer continued to live upon said farm, as theretofore, until March 18, 1895, when James A. Latimer died, leaving a widow and several children, who continued to live upon the farm, Lewis Latimer making his home with the widow until August 30, 1895, at which time Lewis Latimer, with some members of the family, were visiting his grandson, Arthur Latimer, in Marseilles. While there, Mrs. Flint, who was living in Chicago, one of the daughters of Lewis Latimer, came, and an arrangement was made between Lewis Latimer and the widow of James, and Mrs. Flint, that Lewis Latimer should return to Chicago with Mrs. Flint for the purpose of a visit, with an understanding between all parties that at the end of two weeks some member of the family of the widow of James Latimer should go to Chicago and return with said Lewis Latimer. At the end of two weeks the said Arthur Latimer went to Chicago after his grandfather, Lewis Latimer. At that time Lewis Latimer was sick or not well, and did not return to LaSalle county, and has not since returned and has refused to return. On September 6, 1895, Lewis Latimer executed and acknowledged in due form of law a deed to appellants, Catherine A. Earing et al.

"On the 25th day of February, 1896, the bill in this case was filed seeking to set aside the aforesaid deed to James Latimer and have the same declared null and void, on the ground that the same was procured by the fraud and undue influence of said James A. Latimer, deceased. The complainants Catherine A. Earing and Eunice A. Flint are the daughters of said Lewis Latimer, and the

same that were bound out by him about the year 1845, in the State of New York, as aforesaid, and since they were so bound out have never been members of nor lived in the family of their father, Lewis Latimer. They grew to womanhood in the State of New York and ultimately married, and are now living, Eunice A. Flint in the city of Chicago and Catherine A. Earing in the county of Livingston."

Upon a hearing the court found the equities of the cause with the defendants; that the deed in question to James A. Latimer was the deed of the complainant Lewis Latimer; that it was not obtained by fraud or undue influence, and was duly signed and sealed by Lewis Latimer, and delivered by him to a third person for James A. Latimer. Complainants' bill was ordered to be dismissed at their costs. From this decree dismissing the bill for want of equity appellants appeal to this court.

CLARK & CLARK, and TRAINOR & BROWNE, for appellants:

The fraud or illegal influence that will avoid a gift need not be sufficient to set aside a will procured in the same way. Thornton on Gifts, 441.

Where confidential relations exist, and legatees are active in getting the will made, they must show there was no undue influence. *Howry* v. *Hall,* 17 So. Rep. 107.

If the deed is to take effect in the future, as upon the death of the grantor, it is testamentary. *Massey* v. *Huntington,* 118 Ill. 89.

Where the grantor signs and acknowledges a deed without having it recorded, seals it up and hands it to his agent to be delivered to the grantee at the grantors' death, when by its terms it is not to take effect until after the death of the grantor, it is a testamentary devise. *Jones* v. *Lovelace,* 99 Ind. 317.

Where a grantor hands a deed to a grantee and tells him to "put it in our box at the bank," this is not a present

delivery of the deed to the grantee, but the employment by him, as an agent of the grantor, to do an act for the grantor whereby the latter could retain the custody of the deed. *Hayes* v. *Boylan*, 141 Ill. 400.

. As long as the deed remains executory,—that is, without force or effect,—it may be revoked. So long as the purpose of the grantor is *in fieri* the grantor may, with or without cause, at any time revoke the deed and recede from such purpose. *Rountree* v. *Smith*, 152 Ill. 493.

If an attempted or intended disposition of property be of a testamentary character, not to take effect in the owner's lifetime, such disposition will be inoperative unless in conformity with the Statute of Wills. *Comer* v. *Comer*, 120 Ill. 420.

On the subject of testamentary devises in form of deeds, in addition to the cases already cited we refer to *Symmes* v. *Arnold*, 10 Ga. 507; *Gage* v. *Gage*, 12 N. H. 371; *Morrell* v. *Dickey*, 1 Johns. Ch. 153; *Mosser* v. *Mosser*, 32 Ala. 551; *Sharp* v. *Hall*, 86 id. 110; *Crocker* v. *Smith*, 94 id. 295; *Turner* v. *Scott*, 51 Pa. St. 321.

BREWER & STRAWN, for appellees:

The fraud or undue influence to avoid a deed must be directly connected with the execution of the instrument. *Rutherford* v. *Morris*, 77 Ill. 397; *Brownfield* v. *Brownfield*, 43 id. 147; *Guild* v. *Hull*, 127 id. 523.

The burden of proof is on the party alleging undue influence. The proof must be clear and satisfactory. Mere advice, argument or persuasion is not sufficient. *Kimball* v. *Cuddy*, 117 Ill. 213; *Sisters, etc.* v. *Catholic Bishop*, 86 id. 171; *Willemin* v. *Dunn*, 93 id. 511; *Francis* v. *Wilkinson*, 147 id. 370; *Brownfield* v. *Brownfield*, 43 id. 147.

A deed is delivered when the grantor gives it to a third party to hold until his death and then deliver it to the grantee. *Baker* v. *Baker*, 159 Ill. 394; *Crabtree* v. *Crabtree*, id. 342; *Miller* v. *Meers*, 155 id. 284; *Stone* v. *Duvall*, 77 id. 475.

If the grantee dies before the second delivery the deed may be delivered to the heirs of the grantee, and it will be held to have taken effect from the time of the first delivery, so as to vest the title in them. 1 Warvelle on Vendors, 517; *Stone* v. *Duvall,* 77 Ill. 475.

When a deed is delivered to a third party and passes out of the control of the grantor it is irrevocable. *Stone* v. *Duvall,* 77 Ill. 475; 1 Warvelle on Vendors, 513; *Rivard* v. *Walker,* 39 Ill. 413; *McCarthy* v. *Kearnan,* 86 id. 291; *Williams* v. *Williams,* 148 id. 426.

If a deed effects an absolute fee simple conveyance by the first clause, and by a later clause a limit is imposed which can only be done by executory devise, the later clause is void and the estate passes under the first clause. *Palmer* v. *Cook,* 159 Ill. 300.

A testamentary clause in a deed will not defeat another clause which is valid. Schouler on Wills, sec. 270; *Kennebrew* v. *Kennebrew,* 35 Ala. 628; *Reed* v. *Hazelton,* 37 Kan. 321.

A clause in a deed providing that it shall not take effect until after the death of the grantor shows an intention on the part of the grantor to reserve a life estate, and will be so considered, and the deed will be held to pass the estate subject to said life estate. *Shackelton* v. *Sebree,* 86 Ill. 616; *Vinson* v. *Vinson,* 4 Ill. App. 138; *Calef* v. *Parsons,* 48 id. 253.

By the first section of the Conveyance act such a deed, when delivered, is irrevocable, and passes a present right to the future enjoyment of the estate granted. *Vinson* v. *Vinson,* 4 Ill. App. 138; Starr & Curtis' Stat. chap. 30, sec. 1.

If the grantor induces the grantee to believe that the deed has been executed, and permits him to make valuable improvements on the faith of it, the grantor will be estopped from alleging that the deed is inoperative. *Sanford* v. *Finkle,* 112 Ill. 146; 1 Warvelle on Vendors, 513; 2 Herman on Estoppel, 1061; *Walker* v. *Walker,* 42 Ill. 311; *Williams* v. *Williams,* 148 id. 426.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

It is urged by appellants that the decree of the circuit court dismissing the bill in this case for want of equity should be reversed for the reason that the deed in question was obtained by fraud and undue influence on the part of the grantee; that such deed was never operative for the reason that it was not delivered, and that it was a testamentary devise, and void, not having been attested as the statute directs, and for the reason it was to be in force from and after the decease of the grantor, and not before.

The questions as to whether or not the deed was obtained by fraud and undue influence, and whether or not it was ever legally delivered, are questions of fact, which must be determined from the record presented to us. The son, who was the grantee in this deed, lived on the farm with his father, who was advanced in years and unable to perform hard labor, which necessitated that the son take the charge and management of the farm from year to year, which he did do for a number of years. The son was the only member of the family who resided with his father, and it appears from the record that about the time some improvements were necessary the subject as to the future ownership of the farm was talked of between the father and son, as it had been on a number of occasions before. The father expressed a desire to make such provision as would insure his son the future ownership of this land, and expressed a desire to execute a will or some paper which would accomplish such result. An old friend and acquaintance of the family, who was a notary public and banker of Marseilles, was solicited to come to the farm and prepare the necessary papers. On September 21, 1894,—the date of the deed in controversy, —in pursuance of this invitation he went to the farm and was told by Lewis Latimer, the grantor, that he desired

to arrange his matters in such shape there would be no trouble over his property after his death. Upon being asked if he desired to make a will he said he thought he did. Upon being informed by the notary that witnesses would be necessary to a will, and, in reply to an inquiry of Lewis Latimer as to whether any expense would be incurred in the transaction after his death, receiving the information that expense of probation of the will and administration would be necessary, he then declared he desired to arrange the matter in some other way. He was told the only other method would be to make a deed, with a proviso that he should have the control and use of the property so long as he lived, and that the deed should not take effect until after his decease. To this he expressed his satisfaction, and said that was the way he wanted it, at the same time suggesting that he desired each of his daughters to have the sum of $1000, saying that he believed that was all they were entitled to. Upon the suggestion by the notary that he had considerable personal property out of which this might be paid, he responded that he did not have very much, and desired his son, James, to have that, and to pay to each of his daughters the sum of $1000. The deed was then prepared by the notary in the ordinary form, containing the description of the land and the following clause: "This conveyance to be in force from and after my decease, and not before." Also the further clause: "The said James A. Latimer to have all of my personal estate, and to pay to each of my daughters, Catherine A. Earing and Eunice A. Flint, the sum of one thousand dollars ($1000) after my decease." The notary having been furnished, from other papers, the description of the lands, the deed was prepared and read over to the grantor, and he was asked if that was the way he desired it. The grantor then signed the deed and directed the notary as follows: "I want you to take that deed and keep it, and after my decease to deliver it to James Latimer." Something was said regarding a

consideration, whereupon the son, James Latimer, in the presence of the notary gave to his father a silver dollar, which the old gentleman laughingly took, making some jocular remark. The deed was taken and retained by the notary public upon the suggestion and request of the grantor, as above stated, Lewis Latimer remarking at the same time that the notary, being a banker, had a safe place or vault in which to keep it. Within less than one year after the execution of this deed and its delivery to Morey, James A. Latimer, the grantee, died, leaving his widow and children, the appellees in this case. Prior to his death he had made some improvements on the farm. He sunk a well at an expense of about $400, besides which he had furnished lumber, assisted in the work and boarded the men and teams for a number of months while they were engaged in the work. At the time of his death the work of boring the well was not completed, and the widow of James Latimer inquired of Lewis Latimer, who had continued to live with his son and family from the time of the execution of the deed until the death of the son, whether or not she should continue the work. His answer was, "of course," remarking at the same time that the farm would be hers and the children's some time, and stating further that he desired her to take care of him, and that he wished the best of care. Before James Latimer died he had borrowed $97 from his father to make payment of some expense on this well. This amount the father, after the death of James Latimer, collected from Mrs. James Latimer. Lewis Latimer, as appears from this record, also told a number of persons that he expected to remain upon the farm where his daughter-in-law and her children, the appellees, were, where he had the best of care, and that the farm would be theirs some time. He also said he intended to leave things as he and his son had arranged them,—that all he wanted was his living. Some few months after the death of James Latimer, however, Lewis Latimer went to Chicago on a visit

to one of his daughters, and after remaining a number of months he executed to his two daughters the deed mentioned in the statement herein, attempting, apparently, to revoke the deed which he had made to James Latimer.

A careful consideration of all of this evidence fails to convince us that the deed to James Latimer was obtained by fraud or any undue influence on his part. On the contrary, it seems to have been by premeditation and desire of the grantor that the property in question should be so disposed of. 'The evidence in this record convinces us that his intention was fully carried out by the notary public who prepared the deed at his suggestion, he reserving to himself a life estate and giving to his son, James Latimer, the fee. All of the facts connected with the execution by and turning over of this deed to the notary public, who was a banker, to be kept by him in his safe or vault, with directions to be delivered to the grantee upon the death of the grantor, are conclusive, in law, of the delivery of this deed.

The rule is well established in this State that if the grantor, by his act of delivery, loses all control over the instrument by which the grantee is to become possessed of the estate, then there is sufficient delivery. (*Bryan* v. *Wash,* 2 Gilm. 557; *Shults* v. *Shults,* 159 Ill. 654; *Cline* v. *Jones,* 111 id. 563.) The question is to be determined largely by the intention of the grantor, which may be ascertained by his acts and declarations, and by the circumstances attending the execution of the deed and its delivery to a third party. (*Masterson* v. *Cheek,* 23 Ill. 72; *Walker* v. *Walker,* 42 id. 311; *Byars* v. *Spencer,* 101 id. 429.) In the latter case it was said (p. 433): "The question as to what acts are necessary to constitute a sufficient delivery to render a deed operative and to pass the title to the land has been the subject of much discussion in this court. * * * It may be delivered to the grantee or to his agent. Nor is any particular form or ceremony necessary to constitute a sufficient delivery. It may be

by acts or words, or both, or by one without the other, but what is said or done must clearly manifest the intention of the grantor and of the grantee that the deed shall at once become operative to pass the title to the land conveyed, and that the grantor loses all control over it."

In this case it was attempted on the part of the grantor, Lewis Latimer, to make a voluntary settlement or disposition of his property. The law makes stronger presumptions upon the question of delivery in a case of such character. Such settlements, fairly made, are binding on the grantor. (*Reed* v. *Douthit*, 62 Ill. 348; *Walker* v. *Walker*, *supra; Cline* v. *Jones*, *supra; Shults* v. *Shults*, *supra.*) In all such cases, however, the intention of the grantor is the controlling element. From the evidence presented in this record there can be no question but the grantor, Lewis Latimer, intended to make a voluntary settlement, —to devise or deed the land in question to his son. He first had in mind the preparation of a will, and after-wards desired the execution of the deed in question. Upon the execution of this deed a delivery of it was made to a third person with certain directions as to its delivery after his death, which was sufficient, and resulted in the grantor losing all control over the instrument. We hold, therefore, there was no fraud or undue influence in the procurement of this deed, but it was the deliberate and voluntary act and intention of the grantor. We hold, also, there was a sufficient delivery of the deed to pass the title to the grantee.

The third reason urged by appellants for a reversal of the decree in this cause is, that the deed in question was but a testamentary devise, and contained a clause to the effect that it was to be in force from and after the decease of the grantor, and not before, and that it was therefore void. This involves a question of law, only.

Under the statutes of this State livery of seizin is abolished. At common law a freehold estate could not

be created to commence *in futuro*, except where there was a particular estate to support it as a remainder. This was because a charter of feoffment was the only common law instrument for the conveyance of a freehold, and a feoffment was void without livery of seizin, and that ceremony was necessarily performed presently. In this State, by the act of 1827 livery of seizin was abolished, and it was provided, in substance, that every deed or other conveyance should be sufficient without livery of seizin for conveying or transferring lands, so as absolutely and fully to vest in every donee, grantee, bargainee, or purchaser of such estate or estates as should be specified in the deed or other conveyance.

Since the act of the legislature of this State abolishing livery of seizin, the question as to whether or not a deed of conveyance reserving to the grantor a life estate and giving and granting to the grantee an estate in fee is a testamentary devise has been frequently presented. The rule is well established, a conveyance of real estate delivered, but not to take effect or to be recorded until the death of the grantee, is good and valid without the creation of an intermediate estate to support it, and such an instrument cannot be held to be one in the nature of a testamentary devise or disposition of the property. *Harshbarger* v. *Carroll*, 163 Ill. 636; *Shackelton* v. *Sebree*, 86 id. 616; *Vinson* v. *Vinson*, 4 Ill. App. 138; *Calef* v. *Parsons*, 48 id. 253; *Golding* v. *Golding*, 24 Ala. 122; *Gillham Sisters* v. *Munstin*, 42 id. 365; *Elmore* v. *Munstin*, 28 id. 309; *Bryan* v. *Bradley*, 16 Conn. 474; *Wall* v. *Wall*, 30 Miss. 91; *Cummings* v. *Cummings*, 3 Ga. 468.

In the case of *Shackelton* v. *Sebree, supra*, the question was fairly presented to this court by a clause reading, "this deed not to take effect until after my decease,—not to be recorded until after my decease." The deed was properly executed and delivered. There, as here, the contention was urged that the deed was in the nature of a testamentary devise, and as such was not so executed

and authenticated as to become operative and valid. In disposing of that contention it was said (p. 619): "Was this deed void, or did it operate to convey the fee at the death of the grantor? Had he conveyed a life estate to another, or had he conveyed to another to hold in trust for him during his life, then it would have been free from all doubt; or had he, in the same instrument, reserved a life estate to himself, we apprehend that it will be conceded that the title would have passed to the grantee; * * * and had he expressly reserved in this deed a life estate he would have held in the same manner. If, then, in either of these cases the grantor could thus hold the title necessary to support a remainder, why not when, by operation of law and construction of the deed, he holds a life estate in legal effect the same? We are unable to perceive any reason in law or in fact." And further: "Here the remainder-man was in being, named as grantee, and no reason is seen, since livery of seizin has been abolished, why the fee in remainder did not vest on the delivery of the deed, which has been adopted as a substitute for livery."

In *Witham* v. *Brooner*, 63 Ill. 344, it was said (p. 346): "Livery of seizin is abolished by the first section of the Conveyance act, and the title is thereby absolutely vested in the donee, grantee, bargainee, etc., independently of the Statute of Uses. Hence, under this statute a deed in the form of a bargain and sale must be regarded as having the force and effect of a feoffment, and under the Statute of Uses a feoffment to A, for the use of or in trust for B, would pass the legal title to B. In a deed purely of bargain and sale, independently of the first section of the Conveyance act, the rule would be different and the title would vest in the bargainee. Without the first section the legal title would be in the trustee in this case; but as the trust was a passive one, the deed operated as a feoffment would at the common law, and vested the legal title in the *cestuis que trust* by virtue of

the Statute of Uses. Thus the statute executes itself. It conveys the possession to the use and transfers the use to the possession, and by force of the statute the *cestuis que trust* had the lawful seizin, estate and possession."

It is apparent, therefore, that the deed in question was not a testamentary devise, for the reason it was to be in force and effect after the decease of the grantor, and conveyed to the grantee the fee based upon a life estate.

The decree of the circuit court of LaSalle county dismissing appellants' bill for want of equity is affirmed.

*Decree affirmed.*