## LOUISA B. THOMPSON

### *v.*

## EZRA B. CALHOUN.

### *Opinion filed June 23, 1905.*

1. DEEDS—*what a sufficient delivery of a voluntary conveyance.* A voluntary conveyance handed by the grantor to the notary, with directions to keep it in his possession in a safe place and as soon as possible after the grantor's death to "place it upon record," is well delivered, where the notary carries out the instructions after the grantor's death and turns the deed over to the grantee, who accepts it, and where it is clear the grantor reserved no control over the deed after handing it to the notary.

2. SAME—*failure to affix revenue stamps is not fatal to deed or its delivery.* The fact that the revenue stamps had not been affixed to a deed when it was delivered by the grantor into the notary's possession does not affect the efficacy of the deed nor the force of its delivery.

3. SAME—*third party having deed in possession may deliver it after grantor's death.* Where the grantor places a deed in the hands of a third person, to be held and delivered to the grantee, and divests himself of power to recall the deed during his lifetime, the third party may carry out the grantor's instructions after the latter's death and make a valid delivery of the deed to the grantee.

APPEAL from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

216 11

WINSLOW EVANS, and BARNES & BULWARE, for appellant.

OLIVER R. BARRETT, and EDWIN HEDRICK, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery for a decree canceling a deed made by Henry E. Calhoun, deceased, to the appellee, conveying the west half of the north-west quarter of section 27, town 11, north, range 6, east, in Peoria county, and establishing title to said tract in the heirs of said Henry E. Calhoun, and for partition of the premises among said heirs. The court, on a hearing, held the deed to be a valid and effectual conveyance and dismissed the bill for want of equity. This is an appeal to reverse that decree.

The question arising on this record is whether the deed sought to be canceled had been delivered so as to constitute a valid and effectual instrument. The deed bore date July 28, 1900, and was acknowledged on that day. The grantor, Henry E. Calhoun, was then an aged man and a widower. The grantee was his only son, aged about forty-nine years, and was a married man. During the last four years of the life of the father, the son, with his family, lived on the land and the father made his home with the family of the son. The father died on the 27th day of October, 1900. On the said 28th day of July, 1900, about three months prior thereto, the father called upon one George Conover and procured the deed here involved to be prepared, and afterward, on the same day, signed it and acknowledged it before Conover, as a notary public. He then handed the deed to Conover, and the only matter to be determined is whether he placed the deed in the possession of Conover with the intent to thereby permanently divest himself of all power of control and dominion over it.

Conover testified that the deceased told him to prepare the deed and that he would come over in the evening and

sign it; that he (the witness) prepared the deed and Mr. Calhoun came back in the evening, "between sundown and dusk," and signed and acknowledged the deed. Conover further testified: "After Mr. Calhoun had signed and acknowledged the deed he gave it to me and said, 'Keep this deed in your possession in a safe place, and as soon as you can after I am dead, place it on record.' At the same time he asked how much revenue stamps this deed would take. I had two other deeds. He gave two other deeds. I did not know that one deed would take five dollars. I did not know about the others exactly. I said I would have to find out and let him know. He said, 'You find out and let me know and I will give you the money for the stamps.' I kept the deed until after his death. He saw me about it afterwards, I don't remember when, at my shop, and asked if I remembered the instructions when he gave me the deeds. I told him one day I found out how much the revenue stamps for those deeds would take. He said, 'I have not that much money with me to-day; I will get it and give it to you, and you get the stamps and put them on the deed.' He died and did not give it to me. I put the stamps on the deed but don't remember when,—not long before fetching them for record. I don't remember exactly. I had a conversation with Ezra Calhoun after his father's death,—the first or second day after. I don't remember,—between the time of his death and my bringing the deeds to record. I simply told him I had some deeds to be recorded after his, the old gentleman's, death."

We have carefully consulted the record with reference to the insistence of the appellant that it was to be understood from the testimony of Conover that the grantor in the deed qualified the directions given to Conover to hold and keep the deed so as to permit the grantor to call for and receive the deed if he desired to do so. Conover had held other deeds in his possession at the request of the grantor, under instructions to keep them until the grantor should call for

them, and the statements on which the appellant relies to show that the possession of the deed here involved was qualified by the right of the grantor to recall it related to those other deeds, and not to the deed here under consideration.

Appellant claims that it was proven that the appellee did not know that the deed had been made until after the death of his father, and argues that "Henry E. Calhoun merely left the deed with Conover, as his own agent, for safe keeping and with directions to record it after his death; that the deed was not complete, as it still required the revenue stamps," and that Conover was not directed to deliver the deed to appellee, but only to have it recorded. The transaction was in the nature of a voluntary settlement, and much more is presumed in favor of the delivery of a deed as a voluntary settlement than in an ordinary case of bargain and sale. (*Latimer* v. *Latimer,* 174 Ill. 418; *Kirkwood* v. *Smith,* 212 id. 395.) This because the relationship of the parties and the confidence and affectionate regard that exist between them are motives which reasonably induce such conveyances to be made. The instructions given by the grantor to the notary were to keep the deed in his (the notary's) possession while the grantor should live, and as soon as he was dead to place it on record. From these directions the intent of the grantor to irrevocably divest himself of all dominion or right of control over the deed is clearly disclosed. It is true he did not in express terms direct that the deed should be delivered to the appellee after his death, but he did direct that the notary should "place it on record" after his death. No meaning can be attached to the direction to record the deed other than that the grantee in the deed should thereby be invested with the title to the land and should become entitled to receive the deed itself after it had been spread of record. The appellee was called to testify as a witness by the appellant. His evidence tended to show he believed, and had been led by his father to believe, that the tract of land was to become his property after the death of his father and

that the necessary papers to accomplish that purpose had been executed. He expected to be invested after his father's death with the title thereby conveyed by some instrument that would effectuate that purpose. The deed was delivered to Conover to be placed on the public records as evidencing the transfer of the title to the appellee. The appellee, when informed of the existence of the deed, accepted the deed as the instrument he understood had been executed by his father to vest the title to the land in him. The deed was beneficial to the grantee. He accepted it when advised of its existence, and the validity of the conveyance was not affected by the fact he did not know that the deed had been made until after the death of the grantor.

It was not essential to the efficacy of the deed that revenue stamps should have been affixed thereto. In the courts of Illinois a deed will be valid and effectual to convey the title to land though the Federal statute requiring revenue stamps to be placed thereon and canceled has not been complied with. (See cases decided in the courts of this State cited in foot-note 53 to page 670, in 4 Ill. Cyc. Dig.; see, also, 13 Cyc. 559.)

We cannot assent to the view that Conover was merely the agent of the grantor, and that the death of the grantor revoked the authority given to Conover to deliver the deed after the death of the grantor. We have repeatedly held that where a grantor executes a deed and places it in the hands of a third party to be held and delivered to the grantee, and places it beyond his power to recall or revoke the deed during his lifetime, such third party may act after the death of the grantor and carry out the directions given him, and that his delivery of the deed to the grantee would constitute a valid delivery thereof. *Shea* v. *Murphy,* 164 Ill. 614; *Latimer* v. *Latimer, supra; Kelly* v. *Parker,* 181 Ill. 49; *Kirkwood* v. *Smith, supra; Munro* v. *Bowles,* 187 Ill. 346.

The decree must be and is affirmed.

*Decree affirmed.*