JOSEPH A. KELLY, Admr., Appellee, vs. JOSEPH M. BAPST et al. Appellants.

*Opinion filed February 16, 1916—Rehearing denied April 6, 1916.*

1. DEEDS—*whether deed was delivered is a mixed question of law and fact.* What amounts to delivery of a deed depends upon the facts and circumstances of each particular case and is a mixed question of law and fact.

2. SAME—*question of delivery of deed is largely one of intention.* The question of delivery of a deed is largely one of intention as evidenced by the surrounding circumstances and is not conclusively determined by the manual possession of the instrument.

3. SAME—*when delivery to third party will pass title at grantor's death.* The delivery by the grantor to a third party of a warranty deed with directions to send it to the grantee at his death, which directions are carried out, is sufficient to pass title to the grantee, even though the grantor, during his lifetime, continued in occupation of the premises with the grantee, paid the taxes, renewed a mortgage, insured the premises and collected the insurance on a barn on the premises, where the evidence clearly shows his intention to give the property to the grantee.

APPEAL from the Probate Court of Will county; the Hon. J. B. FITHIAN, Judge, presiding.

KELLY & ORR, and PAUL E. PRUTSMAN, for appellants.

FRED MORIARTY, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellee, Joseph A. Kelly, administrator of the estate of Thomas J. Kelly, deceased, filed his petition in the probate court of Will county for the sale of sub-lot 5 of Assessor's subdivision of lots 1 and 2, block 26, Old Town, in the city of Joliet, and other parcels of real estate, to pay debts of said deceased. In the petition he asked to have canceled and set aside as a cloud upon the title of said sub-lot 5 a warranty deed dated February 7, 1912, and recorded October 13, 1914, in the recorder's office of Will county, from said Thomas J. Kelly to Catherine Bapst and

Joseph M. Bapst, her husband, as equal owners, on the ground that the deed was never delivered by the grantor to the grantees or to any person for them, and that he never parted with the dominion or control of said instrument from the time it was made to the time of his death, and that he remained in possession of the property conveyed and exercised acts of ownership over the same until the time of his death. Joseph M. Bapst, husband of the Catherine Bapst named in the deed, was made a defendant, together with the surviving brothers and sisters of Catherine Bapst, she having died prior to the grantor, leaving no children or descendants of children and leaving said brothers and sisters and her husband as her only heirs-at-law. The defendants answered the petition, setting up that the deed in question was duly executed and acknowledged and delivered by the grantor, Thomas J. Kelly, in his lifetime, to the grantees named in the deed, by delivery in escrow to Catherine Kelly, who resided in Chicago, and that the grantor thereby parted with all dominion and control of said instrument. The court found in favor of the petitioner, and on April 29, 1915, rendered a decree finding that the deed in question had not been delivered, and decreeing that said deed should be set aside as a cloud upon the title of said intestate to the lands described in said deed, and ordering that the petitioner file an additional bond as a condition to selling said real estate and other real estate of the deceased. On May 1, 1915, the court rendered a decree of sale for the property described in the deed and the other real estate described in the petition. Joseph M. Bapst and the heirs-at-law of Catherine Bapst have appealed from the decree of sale, and the main question presented by the assignments of error is whether there was a sufficient delivery of the deed to the property in question.

It is first insisted by appellee that the appeal should be dismissed, as the first decree (that of April 29, 1915,) settled the matters in controversy between the parties, and the

decree of May 1 (being the decree of sale of real estate to pay debts) is not a final and appealable order. No reason appears why the probate court rendered more than one decree. The findings and order as to the rights of appellants in the property involved could just as well have been included in the decree of sale. We think the two decrees should be considered as one and that the appeal was rightfully taken.

The only remaining question in the case is whether or not there was a delivery of the deed by the deceased sufficient to pass title. There must be a delivery of a deed of conveyance by the grantor and an acceptance thereof by the grantee in order that such deed pass title, but what amounts to a delivery is largely a question of intention, as evidenced by all the surrounding facts and circumstances. The manual transfer of a deed from the grantor to the grantee named therein and subsequent possession thereof by the grantee may not in all cases amount to a delivery, and, on the other hand, a manual transfer of possession of a deed from the grantor to the grantee is not always necessary to constitute a delivery in law. What amounts to a delivery depends upon the facts and circumstances of each particular case, and, as has often been stated by the courts, is a mixed question of law and fact.

The circumstances surrounding the execution and alleged delivery of the deed in the case at bar were as follows: The grantor, Thomas J. Kelly, was a merchant, who up to the time of his death, and for many years prior thereto, was actively engaged in the dry goods business and conducted a store in the city of Joliet. At the time he executed the deed in question he was a widower about seventy-two years of age and childless. He was well educated, had been secretary of a homestead and loan association and afterwards one of its liquidators, and was accustomed to drawing deeds and releases. He owned several pieces of real estate, including the store wherein his business was con-

ductd, which was situated on the lot in controversy. He lived in a flat over the store. His wife died in 1909. Catherine Bapst, one of the grantees in the deed, had worked for the deceased in his store and had also worked for him and his wife in their apartments for some twenty years, and there is ample evidence in the record that he had a great deal of affection for her because of the faithful services she had rendered and for the care and kindness she had shown him in his declining years and for the care she had bestowed upon his wife, who was an invalid much of the time. Catherine Bapst, whose maiden name was Catherine O'Brien, married Joseph M. Bapst in October, 1908, and went to Chicago to reside. Shortly thereafter the wife of Kelly became sick and her illness finally resulted in her death. Some time before her death Kelly sent for Mrs. Bapst and her husband and requested them to return. They did so, and Mrs. Bapst cared for Mrs. Kelly until she died, and thereafter she and her husband continued to reside with Kelly in the apartments over the store, and it appears that they furnished the groceries and paid for the living expenses of all three. In January, 1912, Kelly made a journey to the State of New York to attend the funeral of a relative and stopped over on the way in the city of Chicago and there met two of his sisters, Bridget Kelly and Catherine Kelly, and handed the latter a paper, telling her that he was leaving the house to Kitty and Joe, (referring to Catherine and Joseph M. Bapst,) and for her to take care of it. She asked if it was a deed, and he said, "No, not a deed; when I come back, if I come back safely, I will have a warranty deed made out." After he returned from New York he drew with his own hand, and executed, the warranty deed in question, dated February 7, 1912, and acknowledged it before Ambrose O'Conner, a notary public, and shortly afterwards he took this deed to Chicago and delivered it to his sister Catherine, and said, "This is the deed," and told her to keep it until he died and to de-

stroy the other paper. She asked him if she was to send it down if he died, and he said "yes," or nodded. The deed remained in her possession until the death of Kelly, which occurred October 12, 1914, whereupon, on learning of his death, she mailed the deed, pursuant to the directions given her by Kelly, the grantor therein, to Joseph M. Bapst by special delivery.

The foregoing facts appear from the evidence of Catherine and Bridget Kelly. The latter was present at the time the deceased left with Catherine Kelly the paper before he went to New York, and was also present when the deed in question was handed to her after his return. Prior to the time he made the deed in question, and afterwards, Kelly, in conversation with friends of many years' standing who were in the habit of visiting him, stated that Kitty (referring to Catherine Bapst) and Joe (referring to Joseph M. Bapst) had been kind to him,—as good as if they had been his own children,—and that no daughter could have taken better care of him than Catherine Bapst. Several witnesses testified to the affection and esteem in which Kelly held Mr. and Mrs. Bapst and of his intention to remember them. After he executed the deed he told Emma Reardon that he was going to leave the store to Kittie and Joe. He also told May Lewis that he considered that Mrs. Bapst had been more than a daughter to him, and that he had made a deed to the store to Kittie and her husband and left it with his sister, to be delivered to them after his death. Catherine Bapst died in September, 1914. On the other hand, it was shown the grantor, after making the deed, continued to occupy the property the same as before; that he paid the taxes up to the time of his death, renewed a mortgage of $2500, insured the premises, collected $250 insurance from a barn situated thereon that had burned, and exercised all acts of ownership until he died. Similar acts as to lands have been held, under certain circumstances, to be inconsistent with the idea of an intention to deliver a deed

272 — 16

to such lands, but they are not necessarily so in the case at bar. It is not claimed by appellants that the gift was made of the property and a deed made and delivered or accepted with the intention that such deed would presently take effect, but that the deed was delivered as an escrow. A voluntary conveyance handed by the grantor to the notary who acknowledged it, with directions to keep it in his possession in a safe place and as soon as possible after the grantor's death to place it upon record was held well delivered, where the notary carried out the instructions after the grantor's death and turned the deed over to the grantee, who accepted it, and where it is clear the grantor reserved no control over the deed after handing it to the notary. (*Thompson* v. *Calhoun,* 216 Ill. 161.) In *Crabtree* v. *Crabtree,* 159 Ill. 342, it was held that delivery of a deed will be presumed from slight circumstances where there is proof of an intention on the part of the grantor to convey to the grantees. In that case it was also held that there was a good delivery of a deed where the grantor executed a deed to land and placed it in the hands of a third person with directions to deliver it to the grantees at his death, where the grantor had often expressed his obligations to the grantees and his intention to convey to them the land described in the deed. Delivery by a father to his son of deeds to other children, to be delivered to them at the father's death, is a sufficient delivery to pass the title, where the father retains no control over them and the son delivers them to the grantees at the father's death. (*Baker* v. *Baker,* 159 Ill. 394.) The delivery of a deed for land to a third party, to be retained until the death of the grantor and then to be delivered to the grantee, is not an absolute delivery and will not operate to vest an immediate estate in the land, but it will be good to pass the title at the grantor's death to the grantee or his heirs. *Stone* v. *Duvall,* 77 Ill. 475.

Under the facts and circumstances of this case appearing from the evidence there can be no question that the

grantor desired to make a gift of the property in question to Catherine Bapst and Joseph M. Bapst, her husband, and executed the deed in question to carry out that intention. Mrs. Bapst had worked for him many years and had rendered valuable services to him and his invalid wife in their declining years, and after her marriage she and her husband lived with the grantor at his request and continued to care for him and he considered them as foster children. He often expressed an intention to do something for them. He was a man of affairs, knew what a deed meant, and it is inconceivable that he would have drawn the deed in question and executed it and acknowledged it without intending thereby to invest the grantees named in the deed with the title to the property described therein. He apparently did not intend to make an immediate gift of the property to the grantees named in the deed but did place the deed in escrow, to be delivered at his death, and the deed was delivered according to his directions. The testimony of Catherine Kelly was not as complete as that of Bridget Kelly, owing, perhaps, to the fact that she was old and in poor health and forgetful. She died shortly after her deposition was taken. If the grantor intended, as he evidently did, to possess and enjoy the property until he died, the fact that he remained in possession and paid the taxes and exercised the other acts of ownership mentioned is not as controlling as it would be if an immediate delivery were necessary to make the deed in question valid. Catherine Bapst died one month before the grantor, and it would seem that if the grantor had ever entertained any desire or intention to recall the deed, or thought he had not put the deed irrevocably out of his possession by the delivery to his sister to keep until he died and then deliver it, that he would have tried to re-possess himself of the deed after the death of Catherine Bapst. In *Hoyt* v. *Northup*, 256 Ill. 604, the case of *Thompson* v. *Calhoun, supra,* was cited with approval, and it was held that the intention of the grantor is the con-

trolling element which determines whether a deed has been delivered, and that question must depend, in a measure, upon the peculiar circumstances of each case. It was further held in that case that a warranty deed reciting a nominal consideration and providing that it shall take effect after the grantor's death, and which is delivered, after the grantor's death, to the grantee by the person having its custody, will be regarded as well delivered, where the circumstances show that there could be no presumption that it was not intended as a present conveyance of a title to begin at the grantor's death, and the direction to the third person to keep the deed safely may as well be interpreted to mean for the grantee as for the grantor. The facts in that case are somewhat similar to those in the case at bar. The grantor, a few months prior to his death, called in a notary public, who was also employed in a near by bank, and requested him to draw a deed, which he did and took it to the house of the grantor, who signed it. The grantor said it had better be put somewhere for safe keeping, and the notary put it in an envelope and took it to the bank, where it remained about four months until the death of the grantor, when a brother of the deceased and another relative called for the deed and took it away and it was recorded. It was held that there was a sufficient delivery under the circumstances of that case, it being a voluntary conveyance to the grantee and the grantor being indebted to her for many years' services as housekeeper, and it was further held that a decree of the county court authorizing the sale of the property described in the deed to pay the debts of the grantor should be set aside as to the property embraced in the deed.

The decree of the probate court of Will county will be reversed and the cause remanded to that court, with directions to dismiss the petition as to sub-lot 5 of Assessor's subdivision of lots 1 and 2, block 26, Old Town, in the city of Joliet.      *Reversed and remanded, with directions.*