CARRIE P. SCHULTZ, Appellee, *vs.* JOHN C. SCHULTZ, Appellant.

*Opinion filed June 22, 1916—Rehearing denied October 5, 1916.*

1. DEEDS—*what essential to delivery of deed.* To constitute a valid delivery of a deed the grantor must voluntarily part with the instrument and all control thereof, with the intention of passing title.

2. SAME—*deed taken from grantor by force is not well delivered.* A deed taken surreptitiously by the grantee and afterwards by force when the grantor attempted to regain its possession is not well delivered and passes no title though afterwards recorded.

3. TRUSTS—*what does not show resulting trust.* Where a husband directs a conveyance of land to be made to his wife the presumption is that he intended the conveyance as a gift and the burden is upon him to show the contrary, and a resulting trust is not shown by his testimony that he directed the conveyance to be made to the wife for the purpose of keeping the property from his creditors.

4. JUDGMENTS AND DECREES—*when decree should not order a reconveyance.* A decree setting aside a deed upon the ground that it is void and a cloud upon the title of the complainant in the bill should not order a reconveyance by the defendant.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

UNDERWOOD & SMYSER, and ROBERT F. KOLB, for appellant.

ROBERT W. DUNN, and ANDREW B. BOUGHAN, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellee filed her bill in chancery in the circuit court of Cook county seeking to set aside a deed dated March 15, 1909, which she had executed and acknowledged but claimed she had not delivered, and which she further alleged had been taken from her by force by her husband, appellant, who was named as grantee in said deed, and also to set aside a trust deed executed by appellee and appellant to the Chicago Title and Trust Company, dated September 17, 1911, securing notes aggregating $20,000. Both instruments conveyed the premises known as lots 1, 2, 3, 4 and 5 of Drexel Park subdivision of the east half of the north half of section 19, township 38, north, range 14, east of the third principal meridian, in Cook county, which was more commonly known as the Schultz building, located on the southwest corner of Sixty-third street and Ashland avenue, in the city of Chicago. Afterwards an amended bill was filed, and appellant and other defendants named in the bill answered. Replications were filed and the cause was referred to a master in chancery, who heard the evidence and made his report, recommending that a decree be entered in accordance with the prayer of the bill. Numerous objections were filed to the report, which were all overruled and were ordered to stand as exceptions. They were in turn overruled by the court and a decree was entered in accordance with the recommendations of the master. John C. Schultz alone appealed, and has assigned as error that the decree is contrary to the law and evidence, and that the court erred in setting aside the deed and the trust deed and in not dismissing the amended bill for want of equity.

The master found, among other things, that the parties were married in 1905; that appellant was heavily involved

and had no money or property, except an equity of redemption in the property in question, when he married appellee; that the property in dispute had been conveyed by appellant to Fred W. Boldenweck; that there were debts owing by appellant, and appellee advanced large sums of money to him and incumbered and disposed of certain property owned by her, and the greater portion of the proceeds derived therefrom was used towards liquidating the indebtedness against the property in question; that the deed from Boldenweck to appellee was made at the request of appellant, and that the title to said property is in the appellee, subject to the incumbrances thereon. The master further found the deed to the property dated March 15, 1909, was never delivered by appellee to appellant as her free and voluntary act; that she never freely and voluntarily signed and acknowledged a deed to said property with the intention of passing absolute title to appellant free from any conditions; that appellant did not live up to or carry out on his part certain conditions imposed by an agreement made between appellee and appellant at the time of making the deed, and that said deed should be delivered up and canceled. The master also found that the trust deed in which the Chicago Title and Trust Company was named as trustee, and the notes secured thereby, were without consideration and void, and recommended that the same be surrendered and delivered up to be canceled.

It appears from the pleadings, proofs and master's report that appellee and appellant were married January 2, 1905, at which time the title to the property involved stood in the name of Frederick W. Boldenweck, who was holding the title in trust for funds which had been advanced by him to Schultz. The deed from Boldenweck to appellee was made at the request of appellant. Appellee at this time owned considerable property in Chicago and in Flint, Michigan, which property was mortgaged, and part of the money

raised by these mortgages was used in improving and in paying indebtedness against the property in question. At the time of recording the deeds from Boldenweck and from appellant to appellee the same were mailed to appellee at her residence in the city of Chicago. These deeds were dated April 10, 1907. Some time previous to the making of the deeds appellee and appellant filed an application for a loan with the Colonial Trust and Savings Bank, reciting that Carrie P. Schultz was the owner of the property in question. On March 17, 1906, an agreement was entered into between Arthur W. Underwood and appellee and appellant, wherein, among other things, it was recited that "Carrie P. Schultz is the owner of lots 1 and 5, block 1, Drexel Park," etc. It will be seen that in this agreement the parties treated the title to the property as in the name of appellee. The purpose of this agreement was to secure a loan in the sums of $45,000 and $12,250. In May, 1908, appellee and appellant assigned the rents from the property in question to Siets J. DeVries for the purpose of paying off advancements made by him. On May 4, 1907, appellant had a deed prepared for the premises in question conveying the same to his brother. This deed, however, was never recorded and was never signed by appellee, though her name was signed thereto either by appellant or someone whom he procured to sign her name. The name "Carrie P. Schultz" in this deed was crossed with heavy ink marks, and on the bottom of the deed was written: "The above is not my signature.—Dated May 9, 1908.—Carrie P. Schultz." This deed had come into the possession of appellee and she had her name crossed out as above.

There is practically no dispute as to the foregoing facts. The circumstances surrounding the delivery of the deed of March 15, 1909, are, as claimed by appellee, that appellant represented to her that if she would convey the premises in dispute to him he would be in a position to secure credit in the community and enabled to enter into the banking

business. Appellee executed a deed to him subject to conditions set forth in a contract, which were to the effect that if appellant would return and live with appellee, furnish her with not less than $10 per week for provisions and household expenses, not interfere with her religion or her daughter, would cut out his relatives, pay off the indebtedness on the building to DeVries and have no more communication with a certain lady clerk in his employ, the transfer would be valid but otherwise null and void. This contract was written by appellee and was duly signed and acknowledged by appellant. Appellee also claims that after this deed and contract were signed she gave appellant a copy of the contract but retained the original and also the deed, and informed appellant that when he showed her that he was ready to go into the banking business she would deliver the deed to him; that the appellant left the house but returned unexpectedly while she was in another apartment and took possession of the deed and original contract; that she objected to his taking it, and he denied having it and permitted her to search him; that she found the deed in his hat but he took it from her by force; that in a scuffle which ensued he dropped the contract and left the house with the deed; that later he returned and demanded the contract and said he did not want the deed if he were to be bound by the contract; that he tore the deed in two and took the pieces to the basement, as he said, to burn them in the furnace. The original deed, which has been certified with the record, shows that it had been torn in two pieces and been pasted together. Appellee supposed the deed was destroyed and never knew it was in existence until it was recorded, nearly three years afterwards. The appellant tried several times to induce her to give him another deed to the property. Appellant's version of this affair is that appellee voluntarily signed and delivered the deed; that he had before that time prepared as many as twenty deeds for her to sign but she had always refused; that he took the deed

and a copy of the contract, and later in the day, or the next day, returned to appellee's home and handed the deed to her, saying that he could not accept the deed under the terms of the written contract he had signed and demanded a return of the contract; that appellee informed him that a pet dog which she had in the house had torn up the contract and it was no longer in existence and handed him the deed back, and he, believing the contract was destroyed, took the deed and kept it for awhile in a safe, then in a book, and carried it for some time in his pocket until it became worn through, and when he finally took it to the recorder's office it was pasted together on the suggestion of a clerk in the office. Appellant also changed the date of the deed and the acknowledgment, which had become illegible, from March 15 to 16. Appellant did leave the house with a copy of the contract and showed the same to a former business associate, Rudolph Cepek, who informed him that a deed signed under such conditions was of no value to appellant. Cepek did not see any deed although he saw the contract. On March 11, 1911, appellant again demanded a deed and threatened appellee and her daughter. She caused his arrest and he was taken to a police station, and while there he signed a paper, in which he said: "I hereby agree that I will not ask her to sign the deed of the corner to me any more or will I not stop L. C. Rose to make the loan." In September, 1911, negotiations were made for the trust deed in question securing a note for $20,000 on the property for the purpose of discharging the indebtedness against the property owing to DeVries. At this time Schultz represented to appellee that the Chicago Title and Trust Company would make the disbursements under the trust deed, and the notes and trust deed were left with the trust company. Instead of using the papers for that purpose appellant afterwards obtained them without appellee's knowledge and deposited them as security with a bondsman

for signing an appeal bond in another case, and after the disposal of this case deposited them with the law firm of Underwood & Smyser to secure them for their fees in this and other litigation.

With reference to the transactions of March 15, 1909, the question immediately arises whether or not there ever was a delivery of the deed by appellee to appellant. By delivery we mean a delivery which is valid and will be upheld in law. It is a fundamental rule of conveyancing that in order to pass a perfect title to the grantee the delivery of the deed must be voluntarily made by the grantor, for by delivery the grantor divests himself of his title and invests the grantee. To constitute a valid delivery of the deed the grantor must relinquish or part with his right of dominion over it, coupled with the intention of passing title. While possession of the instrument by appellant in this case is *prima facie* evidence of delivery, in determining what will constitute a sufficient delivery the intention of the grantor is the controlling element, as evidenced by the surrounding circumstances. (*Kelly* v. *Bapst,* 272 Ill. 237.) As the intent of the grantor is controlling, the mere transfer of a deed from the grantor's possession to that of the grantee without the former's consent conveys no title. Such a deed has been said to be of no more effect that if it were a forgery. (*Felix* v. *Patrick,* 145 U. S. 317.) In the case of *Stiles* v. *Probst,* 69 Ill. 382, it was held that the prerequisite essential to the delivery of a deed is that the deed or instrument in question should be understood by the parties to be complete and ready for delivery. In *Jordan* v. *Davis,* 108 Ill. 336, it was held that it is essential that there be delivery of a deed or written contract to make the same of binding effect, and that such delivery will not be conclusively proved by merely showing the placing of the paper by one of the contracting parties in the hands of the other. As stated in the opinion in that case (p. 341) :

"Delivery is a question of intent, and it depends whether the parties at the time meant it to be a delivery to take effect presently." Tiedeman, in his work on real property, (third edition,) says that delivery is one of the essential elements to the passing of title under a deed, and on page 827 he states: "As long as it remains in the possession of the grantor, and even where the deed has been stolen and the property passes into the hands of an innocent purchaser, or where the deed falls into the possession of the grantee in any other way than by the consent of the grantor and with the intention to pass the title, the title is still in the grantor."

It will be seen that the main issue in the case is whether or not there was a delivery of the deed of March 15, 1909. The only testimony as to what occurred on that occasion is that of appellant and appellee, and their testimony is in irreconcilable conflict. Appellant testified, in substance, that ultimately appellee delivered the deed without conditions. Appellee testified that appellant secured possession of the deed surreptitiously, and when the appellee tried to restrain him, took it away by force and afterwards pretended to destroy it but kept the pieces instead, and long afterwards pasted them together and filed the restored deed for record. The only evidence in support of appellant's testimony is that of two of the neighbors of the parties with whom appellee had had trouble, who testified that about the time the deed was made appellee stated that she had given, or would give, a deed to appellant. On the other hand, it appears from the testimony of Judge Elbridge Hanecy and Edward Maher, both of whom knew the parties and had acted for them in previous litigation but not in the present case, that appellee had always claimed, after Boldenweck conveyed her the property, to own the same in her own right, for the reason, which was conceded by the appellant, that her money and money derived from her individual property had gone into the building. It abundantly appears from the evi-

dence that from the time the deeds were made to appellee by Boldenweck and appellant the former always claimed to be the owner of the property. Sometimes appellee collected the rents and made the leases, sometimes appellant. The latter managed the property most of the time. Many of the receipts for rent from different tenants of the building were from appellee. The trust deed of September 17, 1911, was executed by Carrie P. Schultz and John C. Schultz, her husband. This was after appellant claimed she had deeded the property to him. The testimony is very conflicting, but we cannot say that its weight is clearly and palpably against the decree of the court. In such situation we would not be justified in reversing the decree on the evidence. *Treloar* v. *Hamilton,* 225 Ill. 102, and cases cited; *Miltimore* v. *Ferry,* 171 id. 219; *Maratta* v. *Anderson,* 172 id. 377.

Aside from the question of delivery of the deed, appellant contends that the conveyances from Boldenweck and appellant to appellee constituted a constructive or resulting trust in his favor. Appellee claims that the deed from Boldenweck was made to her because appellant had promised, before her marriage, that he would convey her the property, and also because she had advanced large sums of money towards its completion and expected to furnish more funds, and the master so found. Appellant had secured a decree of court ordering Boldenweck to reconvey the property to him, and claims it was deeded to appellee because of a judgment against him held by one Hutchinson and because of other claims against him. If his version is true he had the property deeded to appellee in fraud of his creditors, and such action does not commend itself to a court of equity. The facts in the case seem to point to but one conclusion, and that is that appellant made a gift of the property to appellee. Where the husband causes property to be conveyed to his wife the presumption is that it was intended as a gift, and the burden is upon the husband to

show the contrary. The evidence shows the title to the property was in Boldenweck and that by direction of appellant he conveyed the property to appellee. Appellant also made a deed conveying the property to appellee. As to appellant and Boldenweck, it was a binding and valid conveyance against them and all persons claiming through or under them. "Where the husband causes property to be conveyed to his wife the presumption is that the same was given to her as an advancement, and the burden of proof is upon him to establish the contrary." (*Lewis* v. *McGrath,* 191 Ill. 401; *Smith* v. *Smith,* 144 id. 299; *Maxwell* v. *Maxwell,* 109 id. 588; *Strayer* v. *Dickerson,* 205 id. 257.) In this case there were no wrongful or fraudulent acts upon the part of the appellee.

The circuit court in its decree ordered that the deed of March 15, 1909, be set aside and canceled, and further decreed that appellant forthwith execute and deliver to appellee a proper deed reconveying all interest claimed by him to have been acquired by said void deed, and upon failure to do so within three days after the entry of the decree, that the master in chancery make a deed conveying to appellee the interest acquired under such void deed by appellant. This was error. A reconveyance cannot be ordered to be made by parties holding under a deed which is decreed to be void and a cloud on the title. (*Rucker* v. *Dooley,* 49 Ill. 377; *Pratt* v. *Kendig,* 128 id. 293; *Clay* v. *Hammond,* 199 id. 370; *Glos* v. *Woodard,* 202 id. 480.) The decree should stop with setting aside such deed.

The decree will stand modified by striking out that part ordering a re-conveyance by appellant and in all other respects will be affirmed.      *Decree modified and affirmed.*