GEORGE STONE *et al.*

*v.*

WASHINGTON DUVALL *et al.*

1. CONSIDERATION—*recital of, in deed, prima facie evidence.* The recital in a deed for the conveyance of land of the payment of a consideration by the grantee, is sufficient evidence that it was made for a valuable consideration, until the fact is disproved. The testimony of the justice who prepared the deed and took its acknowledgment, that he knew nothing of any consideration being paid, will not be sufficient to overcome the recital of payment in the deed.

2. Deed—*delivery to take effect at grantor's death.* The delivery of a deed for land to a third party, to be retained until the death of the grantor, and then to be delivered to the grantee, is not an absolute delivery, and will not operate to vest an immediate estate in the land, but it will be good to pass the title at the grantor's death, to the grantee or his heirs. ·

3. Escrow—*defined.* A deed is delivered as an escrow where the delivery is conditional, that is, when it is delivered to a third person to keep until something be done by the grantee, and it is of no force until the condition be fulfilled.

4. Where a party executed a deed for land to his married daughter, acknowledged the same, and directed the party in whose hands he placed the same to have it recorded, and hold it without delivery until the grantor's death, and his daughter having died, he filed a bill to set the same aside, it was *held*, in the absence of proof of any mistake in drafting the same, that the deed could not be set aside, but that the grantor's original intention must be carried into effect; that he was entitled to the use of the land as though he had a life estate therein, and that upon his death the deed would take effect so as to have vested a title in the grantee by relation back, so as to pass the title to her heirs at law.

Writ of Error to the Circuit Court of Monroe county; the Hon. Amos Watts, Judge, presiding.

This was a bill in chancery, filed by Washington Duvall and Mary Duvall, his wife, against George Stone, Julia Stone, Pearly Stone and Bissell Davis, heirs at law of Mary Stone, deceased, and William Stone, husband of Mary Stone, to set aside a deed made by the complainants to said Mary Stone. The material facts of the case are set forth in the opinion of the court.

Mr. William Winkelman, for the plaintiffs in error.

Messrs. Henckler & Talbott, for the defendants in error.

Mr. Justice Walker delivered the opinion of the Court:

The evidence shows that defendants in error had each been previously married, Washington having a daughter by that former marriage, who was married to William Stone; Mary had a son by her previous marriage, named Allen Agnew.

They each owned a small amount of real estate when married, and discord afterwards having arisen between them, it was agreed that they should respectively relinquish or convey their claim to each other's property, so that the survivor would have no interest in the real estate of the other—to cut off the claim of dower by the wife in the property of the husband, and the right of curtesy of the husband in the property of the wife, and to prevent their step children from claiming any interest in the property of their step parents.

In consummating this arrangement, defendants in error went to a justice of the peace, who, under their directions, prepared deeds which they executed and acknowledged. By one of these deeds the land owned by the husband was conveyed in fee to his daughter, Mrs. Mary Stone. By the other, the wife's real estate was conveyed to Allen Agnew. The justice was directed to have the deeds recorded, and to hold them until the death of the parties, and then deliver them to the respective grantees. Subsequently Mrs. Stone died, leaving her husband, and the other defendants, her minor children, surviving her. The deeds were recorded, as required, by the justice of the peace, and held until after Mrs. Stone's death, when Duvall called and took the deed executed to her from the justice. It appears that Stone, with his wife, was in possession of the property conveyed to his wife when the deeds were made, and he so continued in possession until after the suit was brought.

Complainants claim that the deed to Mrs. Stone was not made in pursuance of their intentions, and contrary to their directions; that the deed was never delivered to the grantee, or to any one for her, and they asked to have it set aside and cancelled, and the property restored to Duvall, as it was before the deed was made. On a hearing, the court below granted the relief sought, and defendants bring the record to this court on error, and ask a reversal.

The evidence of the justice of the peace seems to be rather indefinite as to what the expressed purpose of the parties was

when he drew the deeds. He is, however, positive that he was directed to prepare deeds to convey the land. He proposed to fix the matter by agreement, will or otherwise, but Duvall declined, saying his wife desired deeds. He, when asked the direct question whether the purpose was not to convey Duvall's interest in his wife's property to her son, and any interest she held in Duvall's property to Mrs. Stone, and whether Duvall did not so inform him, says he believes that was the meaning, but that he could not swear to the exact words. He also says that he was afterwards so informed by Mrs. Duvall. He nowhere says that it was understood or intimated that the parties intended or said they desired to retain any interest in the property. By a conveyance in fee, they undeniably would accomplish the purpose of preventing such claims as effectually as by any other mode; and it is strange, if such was the intention, that they did not say that was their only purpose.

Duvall told Stone that he intended to convey the property to his wife, as Stone states in his sworn answer. The deed having been subsequently made in accordance with this declaration, and in pursuance to the advice received from the attorney, a different purpose from that expressed in the deed should be clearly proved, before a court of chancery would interfere to set it aside. The deed itself, in proper form and duly executed, is strong evidence of the grantor's intention, and to overcome it, the evidence should be clear and convincing.

Here we find a man largely advanced in life, the father of a woman having a family of children, and of limited means, and, as it seems, fearful that his wife would, at his death, hold dower in his property, determined to secure the property to his daughter, and it is not out of the usual course of human action for him to make a conveyance to her. He inquired if he could; he said he would, and finally did so convey it. Duvall, himself, testified, and he does not state the purpose of the conveyance, nor the instructions he gave to the justice

of the peace. He does not say that the deed did not carry out his purpose when it was made. He is silent as to the execution of the deed, or what he said to the justice. He does not say there was a mistake, or that the justice did not do precisely what he desired. ⸱ ⸱ ⸱

It is, however, said there was no consideration paid for the property. He acknowledges, in his deed, that there was, and he, and all others, fail to disprove the acknowledgment of the fact in the deed. The justice says he knew nothing of any consideration being paid, but that does not negative the statement in the deed that it was. Even if it was necessary to prove a pecuniary consideration to sustain the deed, still, the deed, uncontradicted, proves that it was paid. We will not stop to inquire whether natural love and affection, although not expressed in the deed, would not sustain it, or whether, on his own theory of the case, the getting of the property free from his wife's dower would not be sufficient.

It is manifest that complainants intended to convey some interest in, and title to these premises to Mrs. Stone, but what interest is not shown by the evidence. Whether it was to be a fee subject to a life estate in the grantor, or some other estate, does not appear. Nor do counsel suggest what estate it was. To cancel the deed would be to permit Duvall to change his mind, and to defeat his act deliberately done after consultation and advice taken, and done in accordance with his previously expressed purpose to convey to Mrs. Stone. It would be clearly wrong to abrogate the deed, unless it clearly appeared that an estate less than a fee, and such an estate as terminated with her life, or previous thereto, was intended to be conveyed, but was not by reason of a mistake.

It is urged that the deed was never delivered. It was not, to Mrs. Stone, as she was probably not aware of its existence for a considerable time afterwards, if it ever came to her knowledge. Was the delivery to the justice of the peace, with directions to record and hold it until the death of

Duvall, a delivery? It was manifestly not an absolute delivery. The fact that he was directed to hold the deed, and not deliver it till the death of Duvall, renders it absolutely certain that the grantor did not intend that the deed should take effect until that time. This removes all doubt on that question. The deed did not, therefore, operate to give Mrs. Stone any immediate rights or interest in the premises. If she acquired any right, it was that the title should only vest in her at her father's death.

Was this, then, a delivery as an escrow? KENT, Ch. J., in the case of *Jackson* v. *Catlin,* 2 Johns. R. 248, says: "A deed is delivered as an escrow when the delivery is conditional, that is, when it is delivered to a third person to keep until something be done by the grantee; and it is of no force until the condition be fulfilled." Sheppard, in his Touchstone, p. 58, gives substantially the same definition, except he does not limit the performance of the act to the grantee, which seems to us to be the more accurate rule. Now this deed was to be delivered on the death of Duvall. That was the express condition upon which it was placed in the hands of the justice, and, according to the authority of the case of *Jackson* v. *Catlin, supra,* it was delivered as an escrow, and could not take full effect until the thing happened that was conditional to its delivery; and Duvall not having died, the deed has not yet vested the title in full, and can not until that event shall occur.

Sheppard lays it down as the law, that "The delivery is good, for it is said, in this case, that if either of the parties to the deed die before the conditions be performed, and the conditions be after performed, that the deed is good; for there was *traditio inchoata* in the lifetime of the parties; and *postea consummata existens,* by the performance of the conditions, it taketh its effect by the first delivery, without any new or second delivery; and the second delivery is but the execution and consummation of the first delivery." But in such a case, the delivery only relates back to

the first delivery so as to carry out the intention of the grantor, and to vest the title. It would not give the grantee a right to intervening rents and profits. So in this case, the deed is an escrow, that will not take effect until Duvall's death, when it may be delivered to the heirs of the grantee, and it will be held to have taken effect so as to have vested such a title in the mother as to pass the fee to them. Until that time, Duvall will be entitled to the use of the property as though he had a life estate, and the children of Mrs. Stone the remainder.

It, then, follows that the court below erred in rendering the decree, and it is reversed.

*Decree reversed.*