ELLA M. WILSON *et al.* Appellants, *vs.* GROVER A. HAGEY
*et al.* Appellees.

*Opinion filed October 25, 1911.*

1. LANDLORD AND TENANT—*purpose of act of 1897, concerning
disposition of rent where life tenant lessor dies.* The purpose of
the act of 1897, (Laws of 1897, p. 247,) concerning the disposition
of rent where a life tenant lessor dies before the rent is due, was
to abrogate the common law rule in such cases but not to affect
the rule where the life tenant was himself cultivating the land.
(*Hoagland* v. *Crum,* 113 Ill. 365, and *Keays* v. *Blinn,* 234 id. 121,
distinguished.)

2. SAME—*act of 1897 applies though life tenant has leased the
land for part of crops.* The act of 1897, for apportioning the rent
between the executor of the life tenant and the remainder-men
where the life tenant dies after leasing the land but before the
rent is due, applies to a case where the lease made by the life ten-
ant is for a share of the crops and she dies after the crops are
planted but before they are harvested.

3. CONSTITUTIONAL LAW—*the act of 1897, concerning recovery
of rent where life tenant lessor dies, is valid.* The act of 1897,
(Laws of 1897, p. 247,) concerning the recovery of rent where a
life tenant lessor dies after leasing the land but before the under-
tenant has paid the rent, is within the title of the act, and is not
prohibited special legislation nor in violation of the fourteenth
amendment to the Federal constitution, but is a valid enactment.

APPEAL from the Circuit Court of Piatt county; the
Hon. W. G. COCHRAN, Judge, presiding.

ELIM J. HAWBAKER, (E. J. MILLER, of counsel,) for
appellants.

F. M. SHONKWILER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Emily F. Wood, who owned a life estate in 110 acres
of farm land in Piatt county, leased the premises to Mary
F. Skeels from March 1, 1909, until March 1, 1910, and

for the use of the premises the tenant agreed to give Emily F. Wood one-half of the corn and two-fifths of the oats raised, as rent. Corn was planted and oats sowed by the tenant. On May 24, 1909, Emily F. Wood died testate, and by her will appellants were made the sole devisees and legatees of all her estate and property, and one of them was appointed administrator with the will annexed of her estate. The administrator and devisees claimed the rents and they were also claimed by appellees, who owned the fee subject to the life estate of Emily F. Wood. By agreement between the parties the question of who was entitled to the rent was submitted to the circuit court for decision upon an agreed statement of facts, without any formal pleadings, under the provisions of section 103 of chapter 110, Hurd's Statutes of 1909. The crops had been harvested and sold and it was agreed that the proceeds from the sale of the rent amounted to $435.85, and the controversy was as to whether the appellants or appellees were entitled to the money. The court rendered judgment in favor of appellants for 85/365 of the rent money and in favor of appellees for 280/365. The judgment apportioning the rent between the claimants is based upon the act of 1897, (Laws of 1897, p. 247,) which reads as follows: "When a tenant for life shall demise any lands and shall die on or after the day when any rent becomes due and payable, his executors or administrators may recover from the under-tenant the whole rent due, but if any such tenant for life shall die before the day when any rent is to become due, his executors or administrators may recover the proportion of rent which accrued before his death, and the remainder-man shall recover for the residue." The administrator with the will annexed and the devisees of Emily F. Wood have brought the case, by appeal, direct to this court on the ground that said statute, if applicable to this case, is unconstitutional.

The statute referred to was passed by the legislature after the decision in *Hoagland* v. *Crum,* 113 Ill. 365. In that case the widow of Hoagland owned a life estate in certain premises. She leased them from March, 1881, to March, 1882, and died November 1, 1881. The heirs of Hoagland brought suit against the tenant to recover for the use and occupation of the premises. The tenant filed a special plea setting up the facts above stated, and averring that after the premises had been leased by the widow, who owned a life estate therein, and before the rent became due and payable, the widow died. A demurrer to this plea by the plaintiffs was overruled, and, they electing to abide by the demurrer, judgment was rendered for the defendant for costs. That judgment was affirmed by the Appellate Court. Said Appellate Court granted a certificate of importance and the case was brought to this court by appeal. This court said: "The single error assigned is, the circuit court erred in overruling the demurrer to defendant's second or special plea and in rendering judgment against plaintiffs for costs. Had it been averred in the plea defendant quit the premises on the determination of his lease by the death of his lessor the plea would undoubtedly have been good. There can be no pretense the heirs could recover for use and occupation while defendant occupied the premises under his lease from the owner of the life estate. But the plea contains no averment defendant quit the premises on the death of his lessor. Although the plea contained no specific averment to that effect, the inference from the facts stated is, he occupied the premises up to the first day of March, 1882, when the lease, by its terms, would expire. On that hypothesis no reason is perceived why defendant would not be liable for the use and occupation of the premises from the termination of his lease by the death of his lessor up to the time when he surrendered the possession to the heirs, who were the owners of the fee, subject, only, to the dower or life estate of the widow. Of course, the death

of her who had the life estate, and who died before the end of the year, terminated defendant's right to occupy under her, and so long as he may have thereafter occupied the premises it must have been under the heirs, who were then the owners of the fee, unencumbered by the life estate of the dowress. It is nowhere averred in the plea the heirs objected to his occupancy for the remainder of the year or that he was evicted by them after the termination of his lease on the death of his lessor. At common law, where a tenant for life gave a lease for a term of years, rendering a yearly rent, and died in the course of the year, before the day appointed for the payment of the rent for the term of years, the rent could not be apportioned. It was for the reason the contract was an entirety. But the tenant might quit the premises, if he chose, on the death of his lessor, and paying no rent to anyone for the occupation since the last day appointed for payment of the rent. (3 Kent's Com. 371; 2 Blackstone, 124.) The statute (George II, chap. 19, sec. 15,) that gave the executors or administrators of the life tenant on whose death any lease determined, the right to recover of the tenant a ratable proportion of the rent from the last day of payment to the date of the death of the lessor has never been adopted by any act of our legislature, so that in that respect the common law remains unchanged in this State."

It seems evident that the act of 1897 was passed for the purpose of abrogating the rule at common law in such cases. By its terms the statute is applicable to all cases where a life tenant demises premises and dies after the rent becomes due or before any rent becomes due. In the case at bar, as the rent was to be paid in grain raised on the premises, the rent would not become due until the grain was harvested, and the life tenant died before that time. We see no escape from the conclusion that the case falls within the provisions of the act and that the rent was required to be apportioned between appellants and appellees.

We do not regard *Keays* v. *Blinn,* 234 Ill. 121, as in any way applicable to this case.. The life tenant in that case did not rent the land but employed men to cultivate it for him. The statute was not designed to affect the rule where the life tenant is himself cultivating and raising crops upon the land.

Appellants contend that the act of 1897 is unconstitutional in that it violates the provision of section 13 of article 4 of the constitution, that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the act is, "An act in relation to landlord and tenant." It is claimed that if the act is applicable to cases like the one under consideration it becomes also a statute of descent and distribution, and therefore unconstitutional. We think there is no force in this contention. It is not a statute of descent and distribution, and the subject of the act is fully expressed in its title.

No valid reasons are given, nor can any such reasons be given, in support of the contention that the act of 1897 violates the constitutional prohibition against special legislation, or the fourteenth amendment to the Federal constitution, that a State shall make or enforce no law which shall deprive any person of property without due process of law. In our opinion the statute is a valid enactment and applicable to this case.

It is conceded by appellants that if the act of 1897 is valid and applies, the apportionment should be made of the rent as it was made by the judgment of the court. The judgment will therefore be affirmed.

*Judgment affirmed.*