## Woman's American Baptist Home Mission Society, Appellee, v. George W. Rayburn, Executor, Appellant.

### Gen. No. 6,248.

1. COURTS, § 94*—*when County Court exercises equitable jurisdiction.* In the allowance of claims against an estate, the County Court exercises an equitable jurisdiction and is governed by equitable rules.

2. LIFE ESTATES, § 12*—*what was liability at common law for rent of lessee of life tenant to reversioner upon death of life tenant prior to expiration of lease.* At common law the lessee of a life

tenant who died prior to the expiration of the lease, according to its terms, was not liable to the representative of the life tenant for rent which had not yet become due, and the lessee could quit on the life tenant's death, or the reversioner could put him out, subject to the lessee's right to emblements, but if the lessee remained with the reversioner's consent the latter could recover for the lessee's use of the lands after the life tenant's death.

3. LIFE ESTATES, § 12*—*what are rights under statute of reversioner as to rent accruing after life tenant's death.* Under the Act of July 1. 1897 (J. & A. ¶ 1075), providing that, when a life tenant of lands dies on or after the day when rent becomes due and payable under a lease by him of the lands, his executors or administrators may recover from the undertenant the whole rent due, but only the proportion of rent accruing before the life tenant's death when he dies before the day when rent is to become due under such lease, and the remainderman the residue, the reversioner is not required to permit such lessee to remain after the life tenant's death, but if the lessee does remain with the reversioner's consent the rent should be apportioned as provided in the act, and the reversioner may recover from such lessee or from the executor or administrator of the life tenant to whom the lessee may have paid it his proportion of the rent accruing after the life tenant's death.

4. EQUITY, § 7*—*when will not relieve against force of a statute.* It is not within the province of a court of equity to relieve against the force of a statute the meaning of which is not doubtful.

Appeal from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 12, 1916.

SAFFORD & GRAHAM, for appellant.

O. V. STOOKEY and HANNA & LAUDER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Mrs. Melissa Hayes was life tenant of a quarter section of land in Warren county and the Woman's American Baptist Home Mission Society was the reversioner. Mrs. Hayes' affairs were in the hands of a conservator, and J. B. and George E. Pratt were in

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

possession of the land as tenants for a term expiring March 1, 1914, when, on October 6, 1913, said conservator executed with Pratt & Pratt a written lease of said premises from the conservator to the tenants for one year, from March 1, 1914 to March 1, 1915, for $1,430, payable on March 1, 1914, which was the first day of the term. They paid the rent to the conservator on March 7, 1914, and continued in possession under said lease until March 1, 1915. Mrs. Hayes died on May 4, 1914. Thereafter the conservator paid over said rent to her executor. On May 5, 1915, the reversioner filed a claim against her estate in the following language:

"To money had and received for the use of said Corporation of Messrs. Pratt & Pratt, such money having been paid for the rent or use and occupation of real estate and premises in Warren County, Illinois, known and described as the North-west Quarter (N W 1/4) of Section Nineteen (19), Township Nine (9) North, Range Two (2) West of the Fourth (4th) Principal Meridian, from May 4, 1914, to and including February 28, 1915, at $1,521.00 per annum.

$1,250.58."

The County Court disallowed the claim and the cause was appealed by the claimant to the Circuit Court, where it was heard without a jury and was allowed in the sum of $1,175.33. The term of the lease was one year and Mrs. Hayes died on the sixty-fifth day, and this allowance in the Circuit Court was for three hundred days or three hundred three-hundred-sixty-fifths of the rent agreed for that year. The claim filed stated the rent at more than the true amount but this was immaterial. The executor appeals from the judgment of the Circuit Court.

If there can be an apportionment of this rent between the life tenant and the reversioner, then the judgment of the Circuit Court should be sustained, because it is equitable. Appellee relies upon the doctrine that in the allowance of claims the County Court ex-

ercises an equitable jurisdiction and is governed by equitable rules, as has been laid down in many cases, including *Wolf v. Beaird,* 123 Ill. 585; *Shepard v. Speer,* 140 Ill. 238; and *Thomson v. Black,* 200 Ill. 465. But it is said in *Donoghue v. City of Chicago,* 57 Ill. 235: ''It is not in the power of a court of equity to relieve against the force of a statute, the meaning of which is not doubtful.'' The statute which appellant claims to be applicable to this case is the Act of July 1, 1897, as follows:

''When a tenant for life shall demise any lands and shall die on or after the day when any rent becomes due and payable, his executors or administrators may recover from the undertenant the whole rent due, but if any such tenant for life shall die before the day when any rent is to become due, his executors or administrators may recover the proportion of rent which accrued before his death, and the remainder-man shall recover for the residue.''
Hurd's Rev. St. 1913, p. 1540; 1916, p. 1635 (4 J. & A. ¶ 7075).

That statute was passed after the common law, relating to the liability for rent of those leasing from a tenant for life who died during the term of the lease, had been stated in *Hoagland v. Crum,* 113 Ill. 365. It was there held that as the contract had been broken by the death of the life tenant, the undertenant was not liable to the representative of the life tenant for rent which had not yet become due; that the lease did not bind the reversioner; that the undertenant could quit, and that the reversioner could put him out; but that if the undertenant remained with the consent of the reversioner, the latter could recover of the former a reasonable satisfaction for the use of the lands after the determination of the lease by the death of the life tenant.

There is one exception to this rule. If the premises are tillable lands, and the life tenant or his subtenant

has put in his crops, and the estate then ends by the
death of the life tenant, an event the time of which
could not be foreseen, the legal representatives of the
life tenant, or his subtenant, can thereafter harvest the
crop.   This is called "the right to emblements."
*Keays v. Blinn*, 234 Ill. 121.   The record in this case
does not show whether any crops had been put in be-
fore the life tenant died.   After the proofs were
closed, claimant sought to show what the facts were in
that respect, and the estate objected that the doctrine
of emblements was not involved.   The court permitted
claimant to call a witness on that subject but he did
not know the facts, and the court declined to hold the
case open for further proof to be procured.   Claim-
ant's counsel then stated that some oats were in, but
no corn.   This was not evidence, and was not admitted
by the other side, and did not become a stipulation.
We cannot know what crops the subtenant put in nor
whether they were in on May 4th, when the life tenant
died.   In this state of the record we treat the case as
if the right to emblements was not involved.

The main object of the statute, we think, was to pre-
vent the undertenant from escaping liability for rent
where the life tenant dies before the lease expired by
its terms.   The statute provides that whatever rent is
due when the life tenant dies may be recovered from
the undertenant in an action by the executor or admin-
istrator of the life tenant; but if any such rent is not
due when the life tenant dies, the executor or adminis-
trator of the life tenant may recover from the under-
tenant the proportion of the rent which accrued before
the life tenant died, and the remainderman may re-
cover for the residue.   The thing specially sought was to
make the undertenant liable to some one for each part of
the rent, and to prevent his escaping liability, as he
could do at common law and under *Hoagland v. Crum*,
*supra*.   It sought to provide who should bring the ac-
tion.   If any rent was due when the life tenant died, the

suit for the sum so due could be maintained by his representatives; if any rent was not yet due when the life tenant died, the representative of the life tenant could maintain an action for the part of the rent which accrued before the life tenant died, and the reversioner could maintain an action against the undertenant for the part which accrued after the life tenant died. It was not the main purpose of the statute to determine how the rent should be divided between the representative of the life tenant and the reversioner. The statute provided for an apportionment between the two if the rent was not due when the reversion took effect, but left that already due by the lease to be sued for by the representative of the one to whom it was payable by the terms of the lease. The position of appellant is, in effect, that if the rent had fallen due on September 30th and the life tenant had died on October 1st, the representative of the life tenant could collect and keep all the rent for the entire year; but if the life tenant died October 1st, and the rent was due October 2nd, then the representative of the life tenant could recover and keep the rent for seven months and the reversioner for five months. We cannot impute to the Legislature so unreasonable an intention. An apportionment having been provided for by this statute, we think the reasonable import thereof, though not expressly so stated, is that all the rent should be so divided. The statute does not intend to compel the reversioner to permit the undertenant to remain. If that could be so compelled under a lease for one year, it could be so enforced under a lease for five or ten years. The statute does not intend to permit the life tenant to make a contract enforceable against the reversioner after the death of the life tenant. As to the rent accruing after the death of the life tenant (leaving out of consideration the right to emblements), it depends upon the consent of the reversioner to permit the undertenant to occupy until the expiration of the

lease. If he so consents, and thereby ratifies the lease to the end of the term, the implied consideration therefor is the rent earned during the rest of the time. Here the remainderman practically ratified the lease for the rest of the rental year. The meaning of the accruing of rent, as distinguished from the date when it is payable by the terms of the contract, is well explained in *Noble v. Tyler,* 61 Ohio St. 432. The principle of apportionment is established by the statute. The portion of the rent which accrued, that is, was earned, after the life tenancy expired, equitably belongs to the reversioner. It is in the hands of the executor of the life tenant. It does not equitably belong to him or to the estate. In equity and good conscience the executor should pay it to the reversioner. A year is three hundred and sixty-five days. The life tenant was entitled to the rent for sixty-five days. The remainderman was entitled to the rent for three hundred days. That method of apportionment under the statute was approved in *Wilson v. Hagey,* 251 Ill. 452. The Circuit Court made a like apportionment here. The case may be stated in another way. If the reversioner had sued the undertenants for the use of this farm, it could have recovered from them the reasonable value of the use and occupation of the farm for the period from the death of the life tenant to the end of the rental year, that is, for its use and occupation for three hundred days, under *Hoagland v. Crum, supra.* There is no evidence that such reasonable value would be anything less than three hundred three-hundred-sixty-fifths of what the undertenants paid for the year. That fraction of $1,430 is $1,175.33, and the reversioner could have recovered that sum from the undertenants. If the undertenants had been compelled to pay that sum, they could have recovered it from the representative of the life tenant, because, to that extent at least, they failed to receive what the conser-

vator of the life tenant contracted to give them, and the executor has the money which they paid the conservator for the rental for that period. To permit the reversioner to recover that sum from the executor of the life tenant avoids circuity of action. The judgment is affirmed.

*Affirmed.*