## Shields A. Blaine, Executor, Appellee, v. Walter C. Blaine, Appellant.

1. LIFE ESTATES, § 12*—*who entitled to rent payable in crops un-der lease of life estate.* Hurd's Rev. St. 1913, ch. 80, sec. 35 (J. & A. ¶ 7075), providing that "When a tenant for life shall demise any lands and shall die on or after the day when any rent becomes due and payable, his executors or administrators may recover from the undertenant the whole rent due, but if any such tenant for life shall die before the day when any rent is to become due, his executors or administrators may recover the proportion of rent which accrued before his death, and the remainder man shall recover for the residue," applies where a life tenant demises premises for rental payable in grain.

2. DEEDS, § 128*—*what estates created by deed to take effect at grantor's death.* Deeds of the land to the grantor's children delivered in escrow to a third party in trust to hold and deliver them to the grantees on the testator's death, *held* to create estate in remainder in the children and to reserve a life estate in the grantor.

3. EXECUTORS AND ADMINISTRATORS, § 124*—*when executor accountable for rent due on lease of testator's life estate.* An executor of a life tenant in land leased under an agreement for the payment of rent in grain raised on the land, *held* accountable for the proportion of rent accrued but not payable at the time of the testator's death, which occurred before the crop had matured and been harvested.

Appeal from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1916. Reversed and remanded with directions. Opinion filed October 13, 1916.

**Statement by the Court.** On October 16, 1902, E. W. Blaine, a widower, and the owner in fee simple of one hundred and eighty acres of farm land in Champaign county, Illinois, executed and acknowledged three warranty deeds. By one of said deeds he conveyed to Shields A. Blaine, a son, seventy acres; by another he conveyed to Scott Wilson Blaine, a son, eighty acres; the third deed conveyed to Walter C.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Blaine, his son, thirty acres of said land. Each deed was a straight warranty deed and contained no reservations of a life estate in the grantor. On the same day, said E. W. Blaine executed his will wherein he devised the lands in the same manner as disposed of by the deeds. On September 29, 1906, the grantor delivered said deeds to one E. S. Clark, of Champaign, together with the following written directions as to the disposition thereof:

"Champaign, Illinois, Sept. 29, 1906.
"E. S. Clark:
"Champaign, Illinois.
"I herewith hand you three deeds from myself to grantees named therein; these deeds I executed for the purpose therein expressed. These deeds I now deliver to you in trust for the grantees in these deeds and I request you to hold these deeds for them until my death at which time deliver them to the grantees named.
"E. W. BLAINE."

The will was also placed in the possession of Clark by said E. W. Blaine at the same time he delivered the deeds to him. On March 19, 1908, the testator executed a codicil to the will wherein he ratified and confirmed the provisions of his will and made a certain provision for two of his daughters which in no way affects the subject-matter of the present litigation. Clark retained possession of the deeds and will until he died, on October 17, 1913, when his widow took possession thereof. The grantor, E. W. Blaine, died September 15, 1914, and the deeds and will were retained in the possession of Mrs. Clark until September 22, 1914, when she delivered the deeds to the respective grantees and deposited the will with the County Clerk of Champaign county. On the date of the death of said E. W. Blaine, there was standing and growing on the land described in the deed to S. A. Blaine, being the same lands devised in the will to Shields A. Blaine, an unmatured corn crop, and also

there was standing and growing on the land described in the deed to Scott W. Blaine, being the same lands devised to S. W. Blaine, an unmatured corn crop. Said corn crops were not matured and gathered until the months of November and December, 1914. For the year beginning March 1, 1914, and expiring March 1, 1915, said grantor E. W. Blaine leased all the lands described in the three deeds to said Scott W. Blaine on a rental of one-half of the grain raised on the premises and certain cash rent. Prior to the time of the death of E. W. Blaine, the oats raised upon a portion of leased premises had been paid to the grantor. The cash rent, by the terms of the lease, became due and payable prior to the date of the grantor's death, and this cash rent was, after his death, paid his executor and accounted for in the estate. No division of the unmatured corn crop had been made between the landlord (grantor in the deeds), E. W. Blaine, and the tenant (his son and grantee in one of the deeds), Scott W. Blaine. Shields A. Blaine was appointed executor of the last will of E. W. Blaine and on November 2, 1915, filed his final report as such in the County Court, in which report he made no account or report of any portion of the corn rental for the year 1914, for the lands conveyed in the deeds. On December 15, 1915, the appellee, W. C. Blaine, filed his objections to said report in the County Court stating therein that the executor had failed to inventory and account to said estate for the proportional share of rent due at the time of the death of E. W. Blaine from the corn crop on said lands in which said E. W. Blaine, now deceased, then had a life estate and which had been leased as above mentioned. The County Court sustained the objections and ordered the executor to account for the proportionate share of rents from the corn crop which had accrued prior to September 15, 1914. The executor appealed from this order to the Circuit Court where

the objections to the report were overruled and the objector, W. C. Blaine, has prosecuted an appeal to this court.

There is no dispute in regard to the facts as they were all stipulated in a written agreement between the parties. It is stipulated that the deeds mentioned were executed by E. W. Blaine for the purpose of making a fair and equal disposition of his estate among his children, taking into consideration all advancements, gifts and assistance given to his children theretofore as well as their services and kindness to him, and that when the grantor delivered said deeds to Clark he parted from all control over them.

It is contended by appellant that when the grantor delivered the deeds to Clark in escrow and parted with all control over the same, the delivery was complete, and title in fee immediately vested in the grantee therein subject to the life estate of the grantor, and that by virtue of section 35, ch. 80, Hurd's Rev. St. 1913, in force July 1, 1897 (J. & A. ¶ 7075) it was the duty of the executor to collect and account for the proportion of the corn rent which had accrued before the grantor's death. This section of the statute is as follows: "When a tenant for life shall demise any lands and shall die on or after the day when any rent becomes due and payable, his executors or administrators may recover from the undertenant the whole rent due, but if any such tenant for life shall die before the day when any rent is to become due, his executors or administrators, may recover the proportion of rent which accrued before his death, and the remainder man shall recover for the residue."

It is the contention of appellee that these deeds did not have the effect of conveying any title or interest to the grantee until after the death of the grantor, but that the title in fee remained in the grantor as long as he lived, and therefore he was not a life tenant and the above statute has no application.

GREEN & PALMER, for appellant.

DOBBINS & DOBBINS and A. D. MULLIKEN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

By the stipulation of facts it is conceded that the grantor parted with all control over said deeds when they were delivered in escrow. Under the repeated decisions of the Supreme Court this constitutes a delivery of the deeds, and that question is not involved in this case.

At common law where a tenant for life gives a lease rendering a yearly rent, and dies in the course of the year before the date appointed for the payment of the rent, the rent cannot be apportioned. The tenant may quit the premises, if he chooses, on the death of the lessor, and pay no rent to any one for the occupation since the last day appointed for the payment of the rent. *Wilson v. Hagey,* 251 Ill. 452. In the case of *Hoagland v. Crum,* 113 Ill. 365, it was held that section 15, chapter 10, of the Statute of George II, which gave the executor or administrator of the life tenant on whose death determined the right to recover of the tenant a ratable proportion of the rent from the last day of payment to the death of the lessor, had never been adopted in this State and that the rule at common law was then still in force. The Act of 1897 was passed for the purpose of abrogating the rule at common law, and applies to all cases where a life tenant demises premises and dies either before or after the rent becomes due, and includes rent payable in grain not yet harvested. *Wilson v. Hagey, supra.*

The determination of the question at issue in the case at bar depends upon what title, if any, passed

from the grantor to the grantees in these deeds upon their delivery in escrow, and this largely depends upon the intention of the grantor when he executed and delivered the deeds.

In the case of *Stone v. Duvall,* 77 Ill. 475, Washington Duvall and Mary, his wife, each had a small amount of real estate when they were married and they executed a deed conveying the property owned by Duvall to his daughter by a former marriage, Mrs. Mary Stone. By another deed the wife's real estate was conveyed to her son by a former marriage, Allen Agnew. These deeds were acknowledged before a justice of the peace who was directed by the grantors to have them recorded and to hold them until the death of the parties and then deliver them to the respective grantees. Subsequently Mary Stone died leaving her husband and several minor children surviving her. The deeds had been recorded by the justice of peace as directed and held by him until after Mrs. Stone's death, when Duvall took the deed which had been executed to her from the justice. Duvall and his wife then filed a bill in chancery making the children and husband of Mrs. Stone defendants, for the purpose of having the deed which he and his wife had executed to her set aside on the ground that it was not made in pursuance of their intentions and had never been delivered to the grantee. The court held that there had been a good delivery, and then discusses the effect of the delivery of a deed as an escrow and said: ''But in such a case, the delivery only relates back to the first delivery so as to carry out the intention of the grantor, and to vest the title. It would not give the grantee a right to intervening rents and profits. So in this case, the deed is an escrow, that will not take effect until Duvall's death, when it may be delivered to the heirs of the grantee, and it will be held to have taken effect so as to have vested such a title in the mother as to pass the fee

to them.   Until that time, Duvall will be entitled to
the use of the property as *though he had a life estate,*
and the children of Mrs. Stone the *remainder.''*   The
deed in the *Duvall* case, *supra,* was a straight deed of
conveyance without the reservation of any life estate,
and it was held that Duvall would have the use of
the property, ''as though he had a life estate, and
the children of Mrs. Stone the remainder.''   In the
case of *Shackelton v. Sebree,* 86 Ill. 616, the deed was
a warranty deed containing the provision: ''This
deed not to take effect until after my decease—not
to be recorded until after my decease.''   In discussing
the rights acquired under this deed it was said: ''Was
this deed void, or did it operate to convey the fee at
the death of the grantor?   Had he conveyed a life
estate to another, or had he conveyed to another to
hold in trust for him during his life, then it would
have been free from all doubt.   Or had he in the same
instrument reserved a life estate to himself, we appre-
hend that it will be conceded that the title would have
passed to the grantee.   Then, in substance, and, if
not, in form, *in what does this differ from the last
two supposed cases?*   Had the life estate been con-
veyed to another for the use of the grantor, without
creating an active trust, the life estate would, under the
statute of uses, have vested in the *grantor precisely
as it did under this deed.   Witham v. Brooner,* 63 Ill.
344.   *And had he expressly reserved in this deed a
life estate, he would have held in the same manner.*
If, then, in either of these cases, the grantor could
thus hold the title necessary to support a remainder,
why not when, by operation of law and construction
of the deed, he holds a life estate in legal effect the
same?

''We are unable to perceive any reason in law or
in fact.   *   *   *; but be that as it may, here the
remainderman was in being, named as grantee, and
no reason is seen, since livery of seizin has been abol-

ished, why the fee in remainder did not vest on the delivery of the deed, which has been adopted as a substitute for livery.'' In the case of *Harshbarger v. Carroll*, 163 Ill. 636, the deed in controversy was a warranty deed and contained this clause, ''only to take effect at the death of the grantor.'' The court said: ''By the act of delivery the title to the fee in the lands in controversy vested in Sylvia Harshbarger, reserving a life estate in the grantor.'' In the case of *Latimer v. Latimer*, 174 Ill. 418, the case of *Shackelton v. Sebree, supra,* was quoted and approved upon this question. In the case of *Bowler v. Bowler*, 176 Ill. 541, one of the deeds in question contained the following clause: ''This deed not to be of any force and effect until after the death of said William P. Bowler.'' The court said: ''That this instrument was a present conveyance of a remainder after the death of William P. Bowler is too well settled by previous decisions of this court to need extended discussion.'' In *Hathaway v. Cook*, 258 Ill. 92, the deed provided: ''It being understood that this deed is to go into effect upon the death of the grantor, Ann Jane Cook.'' From the opinion this clause is apparently treated by the parties and the court as a reservation of a life estate. In the case of *Thurston v. Tubbs*, 257 Ill. 465, the deed there under discussion contained the following clause: ''This deed is to be delivered to the grantee after the death of the grantor.'' This deed was executed and delivered to William Jones to hold as an escrow until the death of the grantor. The decision after reviewing a great many cases uses the following language: ''Such a deed, in fact, takes effect, not at the death of the grantor, but immediately upon being delivered in escrow, if such act is attended with circumstances clearly evincing such intention on the part of the grantor. (*Latimer v. Latimer, supra; Harshbarger v. Carroll*, 163 Ill. 636.) We think it

clear, under the evidence, that Vickerman Robinson intended these deeds to operate as a complete divestiture of his title at the time they were executed and delivered to Jones. If this be true, *the title passed out of him upon the delivery of the deeds,* and hence he had no interest in the premises in controversy at the time of his death, and the inclusion of such premises in his last will constitutes a cloud upon the title of appellees, which a court of equity has jurisdiction to remove." In the case of *Hill v. Kreiger,* 250 Ill. 408, the deeds provided that possession was to be given at the death of the grantor, and the court held: "The grantor's intention to presently vest title in the grantee in the case of a voluntary settlement is regarded as of more importance than the mere manual possession of the deed." In the case of *Vaughn v. Vaughn,* 272 Ill. 11, the court held: "A deed made as a voluntary settlement may be effected to vest title in the grantee although it is retained by the grantor in his possession until his death, if other circumstances do not show an intention contrary to that expressed on the face of the deed. The grantor may deliver the deed either to the grantee or to a stranger for his use, and an acceptance by the grantee will be presumed from the fact that the deed is for his benefit, especially if the grantee is an infant. The test in all cases is the intent with which the act or acts relied upon as equivalent or a substitute for actual delivery were done, and in determining the question whether a deed of voluntary settlement has been delivered, the grantor's intention to vest title in the grantee is regarded as of more importance than the mere manual possession of the deed.—*Rivard v. Walker,* 39 Ill. 413; *Cline v. Jones,* 111 id. 563; *Miller v. Meers,* 155 id. 284; *Baker v. Hall,* 214 id. 364; *Henry v. Henry,* 215 id. 205; *White v. Willard,* 232 id. 464."

From an interpretation of these cases and the language used in the written directions delivered with the

deeds, we think it clear that it must be held in the case at bar that it was the intention of the grantor to presently convey a title in fee to the respective grantees, the enjoyment of which to be postponed until his death, or, in other words, that the effect of the deeds was to reserve a life interest in the grantor with the remainder in fee to the grantees. There can be no question under the facts in this case but that some title or interest was conveyed to the grantees and that some title or interest remained in the grantor. There can be no question but that upon the death of the grantor, the grantees become seized in fee of the property. The only estate that the grantor could retain would be that of life tenant. Under the circumstances no other estate is known at law. It was held in the case of *Stone v. Duvall, supra,* that the grantor "will be entitled to the use of the property as though he had a life estate." We can see no distinction between this and a life estate itself. In any event considering the purpose and object of the Statute of 1897, the grantor having been entitled to the use of the property as though he had a life estate, brings this case within the provisions of the act, and the executor should account to the estate for the proportionate share of the corn rents accrued at the time of the death of the grantor.

The judgment of the Circuit Court is reversed and remanded with directions to sustain the objections to the report and order the executor to account for said rents.

*Reversed and remanded with directions.*