ISAAC SHACKELTON

*v.*

WILLIAM M. SEBREE *et al.*

1. DRUNKENNESS — *to avoid contract of party.* To render a deed of a party void on the ground of drunkenness at the time he executed the same, it must appear he was so greatly under the influence of liquor as to be incapable of knowing the effect of what he was doing.

2. CONVEYANCE — *to take effect in futuro.*  Under our laws a conveyance of' real estate, not to take effect or be recorded until the death of the grantor, is. good and valid without the creation of an intermediate estate to support it, livery of seizin having been abolished.

WRIT OF ERROR to the Circuit Court of DeKalb County ; the Hon. THEODORE D. MURPHY, Judge, presiding.

Messrs. KELLUM & CARNES, for the plaintiff in error.

Mr. R. L. DEVINE, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Plaintiff in error, several years before the death of his father-in-law, John S. Sebree, with the consent and by arrangement of the latter went into possession of the eighty acres of land in controversy.  He improved it by building a house, sinking a well, building fences, and making other improvements to the amount of between $600 and $700.  Two or three years after going into possession his wife died without issue, and he thereupon surrendered possession to Sebree, removing none of the improvements, and the latter had the benefit of the land thus improved during the remainder of his lifetime.

In April, 1873, Sebree died intestate, and under the statute his estate descended to his widow, two children, and a grandchild, according to the rules of descent and distribution.  After Sebree's death, plaintiff in error placed on record a deed from Sebree to himself, for the land in controversy, bearing date September 21, 1870, purporting to have been duly acknowledged and certified by a proper officer.  It contained covenants of warranty, but it contained this clause : " This deed not to take effect until after my decease — not to be recorded until after my decease."

Defendants in error contend, first, that this deed is a forgery ; second, that it is void because it is an attempt to convey a fee to commence *in futuro*, without any particular estate granted or reserved, to support it ; third, it is in the nature

of a testamentary paper, and as such is not so executed and authenticated as to become operative and valid. On the other hand, the first and last propositions are denied, and as to the second, it is contended that though there was no intervening estate created to support the remainder, still it operated as a covenant to stand seized to the use of the grantee.

A careful examination of the evidence in the record fails to show that the deed is a forgery. The justice of the peace who took and certified the acknowledgment, and two others, all swear they were present and saw Sebree execute the deed. And they give details and circumstances that carry conviction to our minds that it was executed at the time and in the manner they describe. Nor is their evidence overcome by the testimony of other witnesses who say Sebree was at another place twenty-five miles distant on the date of the deed. They are no doubt correct in their statement that they saw him at that other place, but all know that the most observing, with the most retentive memory, are exceedingly liable to be mistaken as to dates after years have passed, unless there were strong reasons for charging their memory with precise dates. No such motive seems to have existed here, as no particular interest or sufficient motive seems to have existed for special effort to remember the precise date. The witnesses on the other side have a general recollection of the year, the season of the year, that court was then in session, a particular recollection of the drawing and execution of the deed, but independent of its date, their remembrance of the precise date would no doubt have been indefinite and indistinct. There are but few matters upon which the memory of witnesses differ more than in regard to precise dates. Hence, however honest and intelligent witnesses may be, we should hesitate long in most cases before we would destroy the validity of a deed or other written instrument on their recollection of a particular date.

Nor do we see how a forgery could have been committed

unless the three witnesses who swear to its execution had all entered into a conspiracy for the purpose, and there is no evidence to raise the slightest suspicion that they did. On the contrary, the circumstances all repel such a suspicion. What possible motive could Gilbert, the justice, or Muzzy, the constable, have, in entering into a conspiracy for the purpose of perpetrating such a crime? They are not shown to have any, the slightest, interest in doing so criminal an act. It is true, that the other witness who was present is the brother of plaintiff in error, but we can not base the presumption of crime on that fact, and we find nothing else in the evidence upon which it can be presumed. We can not, therefore, give our assent to such a proposition as that the deed was forged, and that the four persons present, besides the grantor, had conspired to commit, and did commit, the crime. Reference to dates of entries made about the time are inconclusive, as persons making them are liable to be mistaken when they were made.

The evidence that Sebree was in such a state of intoxication as to render the deed void is wholly insufficient for the purpose. We fail to find that it even tended to prove the fact. It no doubt shows he had taken a dram, but no court has held that, of itself, ground for inferring drunkenness to the extent necessary to avoid a deed. To have that effect it must appear that the grantor was so greatly under the influence of liquor that he was incapable of knowing the effect of what he was engaged in doing. Nothing approaching such drunkenness is shown in this case. We can not avoid deeds on loose and indefinite evidence, or mere conjecture not founded even on testimony.

Was this deed void, or did it operate to convey the fee at the death of the grantor? Had he conveyed a life estate to another, or had he conveyed to another to hold in trust for him during his life, then it would have been free from all doubt. Or had he in the same instrument reserved a life estate to himself, we apprehend that it will be con-

620      SHACKELTON *v.* SEBREE *et al.*     [Sept. T.

Opinion of the Court.

ceded that the title would have passed to the grantee. Then, in substance, and, if not, in form, in what does this differ from the last two supposed cases? Had the life estate been conveyed to another for the use of the grantor, without creating an active trust, the life estate would, under the statute of uses, have vested in the grantor precisely as it did under this deed. *Whitman* v. *Broomer*, 63 Ill. 344. And had he expressly reserved in this deed a life estate, he would have held in the same manner. If, then, in either of these cases, the grantor could thus hold the title necessary to support a remainder, why not when, by operation of law and construction of the deed, he holds a life estate in legal effect the same? We are unable to perceive any reason in law or in fact.

If, as it was at the ancient common law, livery of seizin were indispensable to the investiture of title in the grantee, then, under the highly artificial rules that then prevailed, there can be no doubt that there should be not only a particular estate to support the remainder, but livery of seizin to the tenant. As a remainder-man was not entitled to possession, and the fee could not vest without livery, to avoid the difficulty, by a fiction the livery was made to the tenant holding the particular estate, and that was held to be livery of seizin to the remainder-man. Thus we see that livery in such cases was the merest fiction to avoid the violation of a useless artificial requirement. But as commerce and trade advanced, and the necessities of the people changed, most, if not all, of the rigid rules of the feudal system have entirely disappeared. As that system became obsolete, most of its rules and requirements have passed away. And it is because when the reason of a rule ceases, the rule itself ceases.

Livery became necessary because under the feudal system it was requisite that every tenant should owe fealty to his lord, and that he should take the oath when invested with, or let into possession. But this has all passed away, and

real estate has become largely an article of commerce, and most of the fetters preventing or rendering its alienation difficult have been removed.

Our statute has abolished livery of seizin, and deeds of feoffment have gone out of use, and lands are conveyed by deed of bargain and sale, and, under the statute of uses, the use is executed and the title passes to the grantee on the delivery of the deed. And holding the fee, the law holds he is seized not only of the title, but of the possession, as the fee draws to it possession, in law. Our modern tenures have happily been freed from the ancient restraints, and the necessities of society relieved from useless forms and unmeaning ceremonies, until what was a most intricate and highly technical system has become comparatively simple.

If the remainder was contingent, and it was uncertain who would take at the death of the grantor, then it may be that there might exist a distinction; but be that as it may, here the remainder-man was in being, named as grantee, and no reason is seen, since livery of seizin has been abolished, why the fee in remainder did not vest on the delivery of the deed, which has been adopted as a substitute for livery. Where parties have clearly expressed their intention by their written contract, and it is based on a sufficient consideration, and no rule of public policy has been contravened, such agreement should be enforced, unless some stern and inflexible rule of law prevents.

By giving effect to such conveyances we only estop the grantor by his covenants, and hold that he stands seized to the use of the grantee, as in other deeds of bargain and sale. We give effect to the statute of uses. We carry into effect the intention of the parties, and we fail to see that it can work injury to any one. Nor is any necessity of public policy infringed. Reason and justice require it. Nor do we think, since livery of seizin has been abolished, that it is prohibited by the statute or even the strict rules of law.

This, then, being a deed operative as such, it can not be held to be an instrument in the nature of, or intended for, a testamentary disposition of property. Hence it becomes unnecessary to discuss that question.

The decree of the court below must be reversed, and the cause remanded.

*Decree reversed.*