**CARTER OIL CO. v. McQUIGG et al.**
**No. 876–D.**

District Court, E. D. Illinois.
April 18, 1939.

184

Walter Davison and. Craig & Craig, all of Mattoon, Ill., and William M. Acton, and Harold F. Lindley, both of Danville, Ill., for plaintiff.

John J. Baker, of Shelbyville, Ill., and Barber & Barber, of Springfield, Ill., for defendants.

LINDLEY, District Judge.

Plaintiff objects to the master's report recommending that its complaint be dismissed and seeks a decree enjoining defendants from interfering with its rights as oil lessee of a certain 80-acre tract in Fayette County, Illinois, received by its assignor from Leander J. Wood, on June 9, 1936, by virtue whereof plaintiff ostensibly received the right to mine for and take from the premises oil and gas, a freehold property right under the laws of Illinois. Its prayer in this respect is resisted by defendants, who insist that Wood, the grantor in the lease, had only a life estate in the premises leased and that the remainder was at the time of the execution of the grant vested in his children and grandchildren by virtue of a quit claim deed executed by him and his wife on January 30, 1919, whereby they conveyed the said premises to their children, adding, however, this clause, "provided this deed is not to take effect during the life time of either of the grantors." This, defendants say, amounted to a reservation of a life estate only and granted in fee the remainder to the children. Plaintiff contends the. effect of the clause was to make the deed testamentary in character and, inasmuch as it did not conform to the statutes of wills in Illinois, to make it wholly void so that title remains in the grantor or, in the alternative, if grantor retained a life estate, that there was coupled therewith and reserved in the grantors, the power to dispose of the remainder during their lifetime, even though such disposition might annul entirely the vested remainder.

The master found in favor of defendants with respect to these contentions and held that plaintiff had a valid lease only as to the life estate; that such a grant was of no effect as against the remaindermen and that the bill should be dismissed. Plaintiff insists that, even should the court find against it upon its contentions as to the proper interpretation of the Leander J. Wood deed, yet it has a valid lease from the life tenant under the. decisions of Illinois and that against it,- as lessee of the life tenant, the remaindermen and their lessee have no right to produce oil from the land as in so doing they are preceding in face of the fact that the right to enjoy and possess the property has not yet passed to the remaindermen, and that the master was wrong. in recommending a dismissal of the bill but should have recommended a decree enjoining defendants from producing oil from the premises.

Plaintiff claims also to be the lessee of one-fifth of the remainder from one Hogge, grantee of Lemuel F. Wood, a son of Leander J. Wood. But defendant Lemuel F. Wood insists and the master found that his conveyance to Hogge, though apparently conveying the full title, was merely security for a debt and was, therefore, under the law of Illinois, a mortgage, and that though plaintiff, at the time it took a lease from Hogge, had no notice of the equity in Lemuel F. Wood, it was not such a bona fide purchaser for value as would validate its lease from Hogge as against Lemuel F. Wood. Plaintiff insists that, even if the court finds that the conveyance from Wood to Hogge should be interpreted as a mortgage, it was, under the legal standards abiding in Illinois, a bona fide purchaser for value without notice, and, therefore, is lessee in a valid lease as against Lemuel F. Wood.

Plaintiff further claims to be the owner of a valid oil and gas lease of one-fifth of the remainder executed by Arthur M. Wood and his wife, on March 31, 1937. The lease is valid unless impeached by a material alteration as defendants assert and the master found. In this respect

plaintiff contends that the master was in error and that its lease from Arthur M. Wood should be decreed by the court to be valid.

Plaintiff also originally set up in its bill a lease from George Gregg upon one-fifth interest in the remainder. The master found that Alice L. Gregg, one of the children of Leander F. Wood, died before her right to enjoy the premises came into existence; that her husband, therefore, had no dower or other interest and that the lease is invalid. Plaintiff apparently does not now insist that he was in error in this respect.

Defendants asserted as against plaintiff a voluntary partition between the remaindermen which, if effective, would allocate to plaintiff, if it had any valid leases, a portion of the premises apparently unproductive in character. The master found that this partition was incomplete and that it was undertaken for a fraudulent purpose and was wholly invalid. Defendants insist that if there is any valid interest in plaintiff by virtue of its several leases mentioned, the partition should control.

The court will treat these questions in the order mentioned.

 Leander J. Wood and his wife on January 30, 1919, executed a quitclaim deed to their five children. The instrument contained this language: "provided this deed is not to take effect during the life time of either of grantors." Apparently the instrument was delivered and recorded. Plaintiff contends that the proper construction of this language is that the conveyance was not to become effective or pass any title to any part of the property therein described until the death of each of the grantors; that, consequently, the instrument was testamentary in character and void, inasmuch as it did not comply with the statute of wills of the State of Illinois, and that, therefore, no title passed to the grantees under the conveyance.

If this question were undecided in Illinois, I would be inclined to follow the decisions in various jurisdictions, cited in Tiffany on Real Property, Vol. 2, p. 1814, and 68 Corpus Juris, 612, 614. In many jurisdictions, perhaps the majority, it is held that such language cannot be said to apply simply to the enjoyment or possession of the property, but that it applies equally to the entire force and effect of the instrument and is repugnant to and inconsistent with the creation of any present legal estate. However, I am bound by the laws of Illinois, and there, beyond question, a contrary rule controls. In Bullard v. Suedmeier, 291 Ill. 400, 126 N.E. 117, 118, the conveyance provided that it should not "take effect during the lifetime of the grantors." In Harshbarger v. Carroll, 163 Ill. 636, 45 N.E. 565, the grant was "only to take effect at the death of the grantor." In Bowler v. Bowler, 176 Ill. 541, 52 N.E. 437, 439, the instrument contained a provision that it should not be "of any force or effect until after the death of" the grantor. In Venters v. Wickens, 224 Ill. 569, 79 N.E. 946, 947, the limiting language was "at the death of the survivor of said grantors the title and interest in said lands shall vest in said grantee, but not before." In Shackelton v. Sebree, 86 Ill. 616, the grantor said that the deed should not "take effect until after my decease—not to be recorded until after my decease." In Latimer v. Latimer, 174 Ill. 418, 51 N.E. 548, 550, these words were contained in the conveyance: "After my decease to deliver it to James Latimer." In White v. Willard, 232 Ill. 464, 83 N.E. 954, 957, the grantor provided that the "title of said grantees * * * shall become absolute only on the death of" the grantors. The language in some of these conveyances obviously was more strongly persuasive of an intent to postpone the vesting of any title as well as the enjoyment of possession until the death of the grantors than in the present case. Yet in each of the cases, beginning with Shackelton v. Sebree, supra, the Supreme Court of Illinois interpreted the conveyance as a valid grant of a vested remainder with a reservation only of a life estate. This was upon the reasoning that livery of seizin has been abolished by the statute of the State of Illinois and modern tenures thereby "happily * * * freed from the ancient restraints" and that the legal effect is to vest at once the title of the remainder in the grantee subject to the life estate of the grantor. In various of these cases the court considered the suggestion that the deed postponed the vesting of title as well as of the right of possession and, therefore, was testamentary in character and in violation of the statute on wills and in each instance the suggestion was disapproved. It follows that the interpretation of such a conveyance as confronts us is settled by the decisions of the Supreme Court of Illinois and that it is not within the power of this court to entertain or an-

nounce any conclusion inconsistent therewith.

Plaintiff relies upon Steinke v. Sztanka, 364 Ill. 334, 4 N.E.2d 472, where the Supreme Court concluded that a certain warranty deed constituted an ineffective attempt to make a testamentary disposition of property. The court found from all the evidence submitted that the grantor did not intend to make an absolute disposition of her estate before her death but intended the conveyance to be a testamentary devise. However, there was no indication that the court meant to reverse or modify its holdings in the cases above cited, and the case is clearly distinguished from them. There was evidence that the grantor was of advanced age, able to read but little or write; that she never intended to part with control over her property and that she was illy advised. From this extraneous evidence, and that alone apparently, the court concluded as it did.

As an alternative the plaintiff suggests that if the conveyance be properly construed as a valid grant of the remainder, yet under the evidence, the grantor intended to retain full power of disposition of the fee simple at any time prior to his death. Such a reserved power to convey the whole would obviously include the power to convey the lesser, that is, the oil and gas. And it is further said, therefore, that with this power to divest remaining in the grantor, the lease to plaintiff conveyed the entire title to the oil and gas under all the premises. The authorities in Illinois are in accord with the overwhelming authority generally, that the entire estate may be given to one for life with power to sell and convey the fee and divest the remainder and that, though it is uncertain as to what shall remain, the remainder does not become contingent but is vested, subject to be defeated in case of the exercise of the power. Burke v. Burke, 259 Ill. 262, 102 N.E. 293; Bradley v. Jenkins, 276 Ill. 161, 114 N.E. 582; Linn v. Campbell, 289 Ill. 347, 124 N.E. 622. But in each of those cases there was express or necessarily implied, creation or reservation of power in the life tenant to convey the fee and defeat the remainder.

In this case there is no such evidence. · Indeed, the only evidence upon this issue is to the contrary, for the grantor himself, according to the testimony, advised the party procuring plaintiff's lease that he and his wife had only a life estate. To this evidence, however, I have given no consideration as having any bearing upon the question of intention of the grantor. If I am to conclude that the grantor reserved full power of disposition of the fee during his life time, I must find justification for so doing in the language of the deed itself. To reach this conclusion, I must say that the provision that the deed should not take effect until the death of the grantors indicates clearly an intent to reserve power to dispose of the fee and divest the remainder. I do not find any decisions in Illinois justifying such conclusion. In the cases hereinbefore cited, following Shackelton v. Sebree, supra, the court found no such power of disposition. I am of the opinion that such a conclusion would be in derogation of the cases cited and violate the reasoning of the court in making the decisions it made. It follows that from and after the date of the execution and delivery of the quitclaim deed, the grantor was seized of a life estate for the lives of himself and his wife; that the remainder vested at once in the grantees and that no power to divest the same was reserved.

The master concluded that the plaintiff, under its lease from the life tenant, had no power to remove oil and gas, but that they did have a right to enter and perform acts not constituting removal but provided for in the lease. This right he found to be of little consequence. Consequently he recommended dismissal of the bill. The master was rightfully of the opinion that the life tenant could not grant a valid lease to remove oil from the premises. But it is equally true that the remainderman cannot as against the life tenant give a right to a lessee to enter and remove oil. Yet the master concluded that the lessees of the remaindermen had a superior right over plaintiff, apparently because, subsequent to making the oil lease to plaintiff, the life tenant executed a quitclaim deed to the lessee of the remaindermen.

There is no evidence to justify a cancellation of the lease from the owners of the life estate to plaintiff or a refusal to give it legal effect. The competency of the parties, their ability to contract, the subject matter dealt with and the consideration are all without impeachment. A lease such as plaintiff's is, under the decisions of the Illinois Supreme Court, a conveyance of a freehold and a consideration of $1 has been held sufficient to give it valid-

ity. Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46, and many other decisions to this effect, the latest being Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 16 A.L.R. 507. Consequently the plaintiff under its lease has a right to go upon the land, operate for oil and gas, lay pipe lines, build tanks to take care of oil from said premises, and none of defendants has any right to prevent their so doing. Plaintiff is seized of a valid property interest and defendants are without right to interfere with it.

Truly, a life tenant cannot remove the oil from the land in which he has only a life estate unless his remainderman consents, but it is equally true that the remainderman is without right to remove the oil without the consent of the life tenant. Summers on Oil and Gas, Sec. 224, p. 24, Vol. 2, and citations there noted. Obviously if the life tenant and remainderman join in leases to one lessee, the lessee has the rights of all parties and may remove oil. A lease may be inoperable as against the cotenant or remainderman but valid as against the grantor. Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597; Fyffe v. Fyffe, 292 Ill.App. 539, 11 N.E.2d 857. Consequently, it follows that the master's report must be disapproved as to his conclusion that plaintiff's bill must be dismissed. Plaintiff, as the lessee in a valid lease of the life estate, has a valid right under the decisions of Illinois which neither the remainderman, his lessee or its own grantor may without its consent defeat. This property right having been created, the lessors were without power thereafter to destroy it by the device of a quitclaim deed delivered to the lessee of the remaindermen.

On March 31, 1937, Arthur M. Wood and his wife leased their one-fifth interest in the real estate to plaintiff for oil and gas purposes. These grantors averred in their answer that this lease had been materially altered in that the word "ten" had been originally omitted in fixing the delay rental terms and had been inserted in the lease subsequent to its execution so as to have the later effect of fixing the delay rental at ten cents per acre. The master so found.

At the hearing plaintiff introduced its original lease. In this lease the word "ten" in front of the word "cents" in the clause in question appears written with a pen in a blank provided for that purpose. This original instrument, duly acknowledged, under the statutes of Illinois was admissible without further proof. Indeed, it was the best evidence. Thereafter the grantors in this lease attempted to defeat the same by proof of a certified copy of the record of the lease in the recorder's office of Fayette County, Illinois. In such copy, certified by the recorder, the word "ten" was omitted.

Illinois Revised Statutes 1937, Chapter 30, § 34, provide that conveyances such as this, duly acknowledged, may be read in evidence without further proof of execution and that if it shall appear to the satisfaction of the court that the original deed so acknowledged is lost or in the power of the party wishing to use it, the record or transcript thereof certified by the recorder becomes competent proof. Thus it appears that the original instrument, properly acknowledged before an officer of the State of Illinois, is the best evidence; that neither the record nor a copy thereof may be admitted except where the party desiring to use the instrument cannot produce it. Under this statute and under the general rules of evidence, it is extremely doubtful whether a recorder's copy can be received in evidence at all to impeach the original document. To approve its admission is to say that a copy of a copy of the original is admissible to impeach the original. This seems to me foreign to elementary principles.

Irrespective of this question of admission, however, we have in evidence the original instrument and a certified copy of a copy which are not in accord. The burden of proof is upon defendants who desire to impeach the instrument and I am not willing to say that such evidence, that is, a copy of a copy, overcomes the original document.

Each side offered parol and documentary evidence. Defendants produced the recorder who testified as to a great increase in the number of instruments recorded in his office in the last year or so. He stated that it was very possible that there had been a mistake in recording the lease in question; that mistakes had occurred, through advertence. He did not make the record himself, but he said that a typewritten base line originally appearing in the record below the vacant space indicated a blank in the original. The young lady who recorded the instrument had no independent recollection of its contents but

said that such lines were used to indicate misspelling or blanks or other irregularities. Mr. Howell, who procured the lease, testified for plaintiff that the word "ten" was inserted in the lease in his own handwriting prior to the execution by lessor; that the word "ten" was in the lease when it was signed; that he knows this because it is in his handwriting; that he never saw the lease after he delivered it to the company to be recorded until shortly before the time of the trial. His veracity is unimpeached, unless by the circumstances of the case. The young lady in the office of the Carter Oil Company who files and checks leases, testified that all leases are checked as they come into the office; that if there had been a blank space in the lease in question, it would have been indicated and that to the best of her knowledge there was no blank. In addition, plaintiff offered in evidence copies of the records of leases in the recorder's office of Fayette County, showing a variance from his stated customary rule of a line in all cases of blank spaces or misspelling,—records which contradict the generality of such custom. In addition there are many instances of mistakes occurring in the recording of other instruments.

In one of them from Mrs. Birdie Kimball to one Von Almen, the original lease on a blank form has in the body of the lease a printed provision for delay rental of ten cents per acre with no blank space, and yet in the recorder's office, the record, instead of showing continuous printing, shows a blank space before the word "cents." Indeed, the court, upon observation of this lease, finds many discrepancies between the original and the copy. In the original the consideration is stated as $5. In the certified copy it is stated as $5 "and OVC." The "and OVC" is typewritten in the certified copy and also in the photographic copy of the record. In the certified copy of the record immediately following the description appears the words "it being the purpose and intent of the lessor herein to lease all of the lands however described owned by the said lessor in the section or sections herein specified." There is no such clause in the original lease following the description and, as before noted, in the original lease the printed provision as to the delay rental to be paid is "the sum of 10 cents per acre," yet in the certified copy and the record, the recorded provision is "the sum of" (printed) "———— cents per acre" (written in

typewriting). Obviously, the recorder was truthful when he said that it was very possible that a mistake was made in the recording. Defendants attack the relevancy of evidence of these mistakes. If the copy of the lease made by the recorder is competent evidence in an attempt to impeach an original document, it is obviously competent to elicit from the recorder, on cross examination, that mistakes had frequently occurred in copying similar instruments in the record. It seems equally proper for plaintiff, in further rebuttal to the evidence of the recorder, to show specific glaring instances of such mistakes.

There was further evidence that subsequent to the first session before the master and before he concluded his hearing, an erasure was made on the blank space in the recorder's office where the word "ten" would appear if it were inserted. But to my mind this evidence is wholly immaterial. If it were an attempt to eliminate the word "ten," which the master thinks improbable, it would not affect the original instrument. If it were an attempt to eliminate the line, as the master believes, it had no significance or relevance upon the question of alteration of the original lease. The presence or the absence of a line on the record is of little or no importance in view of the undisputed evidence that in many instances there are no such lines made by a typewriter on the record in cases of blank spaces. In short, the evidence eventually raises the question of whether, when an original instrument, which is the best evidence, is produced, it can be impeached by a certified copy of a copy made in an office rushed by business and apparently wholly inefficiently conducted. If recorders are prone to make such mistakes as are obvious in this record, it rather behooves them to install a recording system whereby photographs instead of copies are recorded.

Furthermore it appears that the grantors, who had opportunity to testify, at no time denied that the word "ten" was written in the lease when it was executed by them or that there had been any alteration in the lease which they executed. Consequently we may assume that, if they had testified, their testimony would have been unfavorable to themselves. Klee v. Chicago Trust Company, 365 Ill. 354, 355, 6 N.E.2d 442; Page v. Keeves, 362 Ill. 64, 199 N.E. 131; Prudential Insurance Company of America v. Bass, 357 Ill. 72, 191 N.

E. 284; Belding v. Belding, 358 Ill. 216, at page 220, 192 N.E. 917; Mammoth Oil Co. v. United States, 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed 137; Wahlgren v. Bausch & Lomb Optical Co., 7 Cir., 68 F.2d 660. To my mind the original lease has not been weakened by any material or competent evidence; but if all the evidence is considered, it is apparent that the grantors have failed to prove a material alteration. The lease of Arthur M. Wood and wife to the Carter Oil Company must be given effect and the master's conclusion in this respect is disapproved.

Lemuel F. Wood, the owner of one-fifth interest in the remainder of the real estate described, by virtue of the deed from his father, Leander J. Wood, on November 3, 1933, conveyed his undivided one-fifth interest to W. W. Hogge. Thereafter, on the 30th day of March, 1937, Hogge and his wife executed a lease of the oil and gas in the premises to plaintiff. Defendants insist that the conveyance from Wood to Hogge was a mortgage; that though plaintiff had no notice of this fact, it was not a bona fide purchaser for value, so as to validate its lease as against the real owner.

The evidence showed that Hogge is a close relative of Lemuel F. Wood and the undisputed testimony is that the quitclaim deed was intended as a mortgage. Why Hogge, holding a mortgage, executed a grant of the freehold is unexplained by either of them. But, accepting their otherwise unconfirmed testimony that the conveyance was intended to secure a debt, the question arises as to whether plaintiff, who procured its lease from Hogge without notice of the limitations upon his title, was such a bona fide purchaser as to be protected in its conveyance of the full fee of the land, so far as oil and gas are concerned. When the Carter Oil Company took the lease from Hogge, it paid him an actual consideration of $1 per acre. Under the evidence this is the highest price then being paid for leases in the Loudon Pool where this land is located. In 1937 many leases were purchased for $1 per acre and many for ten cents per acre. The territory was what is known as wildcat territory; that is, speculative, with no wells drilling and none producing. Consequently, the evidence is undisputed that the consideration paid for the lease at the time of the execution, was fair and adequate.

The lease further provided for the payment of delay rentals during the period when no wells were drilled. There is no evidence other than that of performance of these provisions. Under the decisions heretofore referred to, the lease from Hogge to plaintiff, therefore, conveyed the freehold of the remainder unless plaintiff can be said not to be a bona fide purchaser for value.

In Summers on Oil & Gas, Vol. 2, Section 231, p. 49, it is stated that it is generally recognized that the value of a lease for oil and gas purposes on land situated in unproven territory is wholly speculative; that there is usually a fixed price per acre paid upon execution of lease; that in one sense, this is payment in advance of the socalled rental for the privilege of exploring the land for the first year; that the sum paid for the lease, whether large or small, usually represents the market value of the lease as established by the bargaining between lessors and lessees in the particular community and of the competition between the prospective lessees for desirable land, and the fact that the sum paid by an oil and gas lessee upon the execution of a lease is small, should not prevent the lessee from asserting the position of a bona fide purchaser for value as the payment made usually represents the market value of the lease.

A valuable consideration is not necessarily a large consideration. It involves the parting of money or money's worth for something for value. The purchaser gives up the consideration for the property. The amount of the consideration, if otherwise in good faith, is not material, in the absence of fraud, duress or other grounds for equitable relief. Pomeroy's Equity Jurisprudence, 4th Ed., Section 747, p. 1527. Thus in Barton v. Mayers, 183 Ill. 360, 55 N.E. 884, a man obtained a deed for $50. There was no fraud, unfair advantage or other impeaching fact, but the land proved to be of much greater value. The Supreme Court was of the opinion that the small amount of the consideration should raise no presumption against the rights as a purchaser. And in Booker v. Booker, 208 Ill. 529, 70 N.E. 709, 100 Am.St.Rep. 250, the court noted that because the grantee purchased the land for a grossly inadequate price, she was not necessarily chargeable with knowledge of a prior unrecorded deed; that to hold that because she paid a small consideration for

the land, she ought to be held chargeable with notice of the defect in her title, would be to authorize the setting aside of every title obtained for an inadequate price. And in Adams v. Peabody Coal Co., 230 Ill. 469, 82 N.E. 645, 646, the Supreme Court approved that long known principle that "inadequacy of consideration is, of itself, no ground for impeaching a contract in a court of equity," citing 1 Chitty on Contracts, 14th Am.Ed., p. 30; Lawrence v. McCalmont, 2 How. 426, 43 U.S. 426, 11 L.Ed. 326; Waterman v. Waterman, C. C., 27 F. 827. Thornton says in his work on Oil and Gas at page 260, as would seem obvious, that the law with reference to the rights of innocent purchasers in the case of oil leases is not different from their rights in other situations. To be an innocent purchaser, the grantee must have paid a valuable consideration. As between the lessor and lessee, a nominal consideration is sufficient and if there is fair dealing between the vendor and purchaser, it is not necessary that the consideration be adequate, that is, commensurate with the value of the property developed later. 66 Corpus Juris, p. 1107; Guyer v. Warren, 175 Ill. 328, 51 N.E. 580.

Nor do I think the facts warrant any conclusion that the $16 paid was only a nominal consideration. It represented the full market value of oil leases at that time in the territory where this land was located. The evidence that this was greater than the earlier price paid and as large as any that was paid at that specific time, is undisputed.

It comes down to this, if one makes a good bargain with another, without taking any unfair advantage of him, and procures at the market price a piece of property which later becomes of much greater value, the fact that there is a discrepancy and lack of commensuration between the original consideration paid and the ultimate value, as it develops, is wholly immaterial. Parties who make contracts should keep them.

Lemuel F. Wood and his wife, having put it within the power of Hogge by their own act, that is having conferred upon him power to convey the fee, may not complain that in pursuance of his apparent power, he made a conveyance of that which he had apparent right to convey for what was then a fair consideration simply because later upon development of other facts the land became more valuable. The master's

conclusion in this respect is disapproved. The lease is valid and should be enforced, the benefit thereof, however, to be delivered to and received by Lemuel F. Wood.

Defendants contend that a later voluntary partition of the premises, by exchange of deeds between various ones of the parties, resulted in allocating plaintiff's lease of two-fifths of the acreage to land most distant from production. Concerning this phase of the case, the master rightfully concluded that the partition was incomplete, in that a minor owning one-fifth interest could not convey and was unaffected; that she did not participate in the alleged partition; that in the so-called partition, Arthur M. Wood and Lemuel F. Wood reserved their two-fifths interest in the ownership of the buildings on the part of the land which they conveyed to the other adults; that the partition was further incomplete as to the adults in that two of them testified positively that the deeds were not intended to divide the interest of the oil in any way and that they had accepted the north end of the eighty acres which is farthest from the adjacent producing wells and released their interest in the south end which is surrounded by producing oil wells. Each of these socalled partitioners was a lessor who is now attempting to void the lease upon his interest.

The master said that the long series of suspicious circumstances under which the partition seems to have been conceived and its incomplete character condemn the whole proceeding out of hand as an ill-conceived attempt to relegate plaintiff and its rights to that part of the eighty-acre tract farthest from productive drilling and stamp the entire transaction with an unfair or fraudulent purpose. He concludes that the so-called partition deeds were entirely without effect, so far as plaintiff was concerned. This conclusion was correct. A voluntary partition which is not binding on all the cotenants is not binding on any of them. Cochran v. Cochran, 277 Ill. 244, 115 N.E. 142; Center v. Davis, 113 Cal. 307, 45 P. 468, 469, 54 Am. St.Rep. 352; Pacific Bank v. Hannah, 9 Cir., 90 F. 72, 77; 47 Corpus Juris, § 35, page 280.

Alice L. Gregg was a grantee in the deed from Leander J. Wood, as one of his children. Mrs. Gregg died within the life time of her father, intestate, leaving surviving her, her husband George Gregg

and three children. By a lease dated March 31, 1937, George Gregg, her husband, after the death of his wife, leased to plaintiff her former interest in the remainder for oil. At the time of making his lease, he had no dower or other interest in the land and plaintiff acquired no right or interest therein. There is no dower in a remainder subject to a life estate. Kirkpatrick v. Kirkpatrick, 197 Ill. 144, 64 N.E. 267; Kellett v. Shepard, 139 Ill. 433, 28 N. E. 751, 34 N.E. 254; Strawn v. Strawn, 50 Ill. 33. The master rightfully concluded that the lease is a nullity and should be cancelled by decree of this court.

It appears, therefore, that plaintiff is the owner of a valid lease from the life tenant upon the premises in question and upon the undivided two-fifths interests of Arthur M. Wood and Lemuel F. Wood in the remainder; that defendant McQuigg is the owner of leases upon three-fifths of the remainder; that the quitclaim deed to him by Leander J. Wood, made after the latter's lease to plaintiff, is ineffective and of no avail against plaintiff; that the Gregg lease to plaintiff is of no effect; that plaintiff may not drill for oil as against the remainderman; that it has the full right to drill for oil and gas from both life tenant and remainderman in an undivided two-fifths, but that these rights it may not enjoy without the consent of its cotenants; that McQuigg, as lessee from three-fifths of the remaindermen, has no right to drill for oil as against plaintiff, the holder of leases from the life tenant and two-fifths of the remaindermen; that neither may proceed without consent of the other. It follows that plaintiff should be awarded an injunction enjoining all defendants from producing oil upon any part of the eighty acres in question. To that extent plaintiff's complaint must succeed; the master was in error in directing its dismissal.

This situation leaves the parties in a position where, in the absence of voluntary agreement or of further evidence in this court, no provision can be made for the production of oil upon this land. There will be an interlocutory decree awarding an injunction to plaintiff, restraining the defendants and each of them from producing and selling oil from said premises. The costs thus far will be taxed equally against plaintiff and defendants. Whether a further decree shall be had making disposition of the oil and gas under the property is reserved for further action of the court. If the parties cannot agree as to what shall be done, this court will entertain a motion for a receiver to produce oil from the premises in question and to make proper disposition of the moneys realized from such oil. To support such relief would involve the showing of necessity of intervention by the court to prevent draining of the land at the expense of the various parties in interest by adjacent wells.

The master's report is disapproved to the extent and in the matters hereinbefore indicated and approved in all other respects. The court adopts the findings of fact and conclusions of law herein contained, including such of the master's as are approved.